**ITASCA COUNTY SOCIAL SERVICES
and Sally Diane Halverson,
Respondents,**

v.

**Cimarron PITZEN, Appellant.**

**No. C3–92–127.**

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Denied Oct. 20, 1992.

John J. Muhar, Itasca Co. Atty., W. James Mason, Asst. Co. Atty., Grand Rapids, for respondents.

Steven A. Nelson, Steven A. Nelson, Ltd., International Falls, for appellant.

Considered and decided by LANSING, P.J., and PETERSON and SCHULTZ, * JJ.

## OPINION

LANSING, Judge.

This appeal in a paternity action challenges the trial court's grant of an alternative motion for judgment notwithstanding the verdict (JNOV) or new trial on a jury determination of no parentage. We affirm the trial court's decision that the statutory presumption of paternity was unrebutted by clear and convincing evidence that the alleged father was not the parent.

## FACTS

A laboratory accredited by the American Association of Blood Banks performed genetic testing on blood submitted by Cimarron Pitzen, Sally Halverson, and a child born to Halverson on October 4, 1990. The tests revealed a paternity index of 1,407 to 1 and a 99.93% probability that Pitzen was the child's natural father.

Halverson testified that she and Pitzen had sexual intercourse on December 25, 1989, approximately nine months (284 days) before the child's birth. The child was several days overdue and at birth weighed nine pounds. Halverson testified that she had not had sexual intercourse with anyone other than Pitzen between November 4, 1989, and March 4, 1990.

Pitzen admitted that he and Halverson had intercourse on December 25 but disputed the reliability of the blood test. Pitzen also offered evidence that his brother and another male were observed leaving Halverson's room near 4:00 a.m. on January 19, 1990.

The jury returned a 5/6th verdict finding Pitzen was not the child's father. In posttrial motions the court ruled that Pitzen failed to establish by clear and convincing evidence that he was not the child's natural father and granted JNOV and, in the event

judgment was reversed, ordered a new trial.

## ISSUE

Did the trial court err when it granted JNOV finding that appellant is the natural father of the child?

## ANALYSIS

A blood test conducted in an American Association of Blood Bank's accredited laboratory calculated with a prior probability of no more than 0.5 (50%) that shows a likelihood of 99% or greater of the alleged father's paternity creates a presumption of parentage. Minn.Stat. § 257.-62, subd. 5(b) (1990). The party opposing the establishment of paternity has the burden of proving by clear and convincing evidence that the alleged father is not the parent. *Id.*

The trial court concluded that Pitzen offered only prejudicial and irrelevant testimony against paternity and no evidence that he was not the father of the child. In reviewing the court's JNOV, we view the evidence in the light most favorable to the verdict and affirm a JNOV only when the evidence against the verdict is practically conclusive. *Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn.1988); *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

Pitzen does not dispute that he and Halverson had intercourse on December 25 or that the blood tests were conducted by a properly accredited laboratory. He maintains, however, that he rebutted the presumption of paternity by presenting evidence that Halverson may have had sex with other men within the time period she likely conceived and by demonstrating that the test results may have been incorrect.

Pitzen's attorney argued to the jury that Halverson may have had intercourse with other men, including two of Pitzen's brothers, while attending a rodeo in Chicago January 18–20, 1991. Troy Pitzen testified that he saw a second Pitzen brother and another male leave Halverson's motel room

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

near 4:00 a.m. Despite knowledge of the identity of the second brother and the other male, neither were called to testify. Although Troy Pitzen slept on Halverson's motel room floor one night, he testified that he had not had intercourse with Halverson. Furthermore, the child would have been three weeks premature if conceived in late January. Halverson's unrefuted testimony established that the child was overdue and weighed in excess of nine pounds at birth.

Pitzen argues that he established the paternity index was unreliable and may have been incorrect because (1) he received over two gallons of blood through transfusions while undergoing shoulder surgery in the spring of 1990, (2) the laboratory thought he was caucasian when in fact he is part American Indian, (3) the index is based upon a comparison probability, (4) the index assumes the alleged father is fertile, and (5) there may have been human error.

Pitzen's blood transfusion occurred nine months before collection of the blood sample for the paternity test. The undisputed testimony of the county's expert witness established that a blood transfusion has no effect on paternity blood testing if the transfusion occurs more than three months before obtaining the sample.

On the consent form that accompanied his blood sample, Pitzen stated that he was "white", and the laboratory prepared the index under this assumption. Pitzen did not disclose his ethnicity until trial. The county's expert witness testified that although Pitzen's ethnicity might change the paternity index "a little," ethnicity would not exclude him as a possible father.

The paternity index is not faulty simply because it compares the possibility of parentage of the alleged father and an unknown male. The evidence is undisputed that the test was performed by a qualified expert according to Standards for Parentage Testing of the American Association of Blood Banks. The test results met the statutory standard of showing a 99% or greater likelihood of parentage, calculated with a 0.5 prior probability. *See* Minn.Stat. § 257.62, subd. 5(b).

Similarly, the index is not unreliable because it assumes fertility. Evidence of infertility is the type of clear and convincing evidence that can be offered to rebut the statute's parentage presumption. Pitzen offered no evidence of infertility.

Although human error is possible in any testing situation, there was no evidence to suggest error. Furthermore, the unrefuted testimony of the county's expert witness established that an error generally redounds in favor of the alleged father by erroneously excluding parentage. That the laboratory has not always scored 100% in random tests does not establish error in Pitzen's test.

The evidence conclusively shows that Pitzen and Halverson had sex nine months before the birth of the child and that properly conducted tests established a 99.93% probability that Pitzen was the child's father. In imposing a statutory presumption for test results that show a 99% or greater likelihood of paternity, the legislature determined that the blood testing procedure in certified laboratories is sufficiently precise and reliable to justify shifting the burden of proof to the person opposing the establishment of paternity. The person in opposition can present evidence that the test was improperly conducted but cannot attack the validity of the test methodology. The trial court correctly ruled that Pitzen failed to present evidence to rebut the statutory presumption of paternity.

## DECISION

When the statutory presumption of paternity attaches, it must be rebutted by clear and convincing evidence that the alleged father is not the parent. The trial court correctly ruled that there was no clear and convincing evidence that rebutted the paternity presumption and the JNOV is affirmed.

Affirmed.