Merrimack
No. 93-676

MARK J. WELZENBACH

v.

PATRICIA T. POWERS

June 30, 1995

*Shaheen, Cappiello, Stein & Gordon,* of Concord (*Robert A. Stein* on the brief and orally), for the plaintiff.

*Braiterman Law Offices,* of Concord (*David J. Braiterman* on the brief and orally), for the defendant.

BATCHELDER, J. The defendant, Patricia T. Powers, gave birth on December 1, 1992, to a healthy baby girl. In a paternity action in

superior court, the plaintiff, Mark J. Welzenbach, was adjudicated the father of the child.

By a writ dated February 22, 1993, the plaintiff initiated this action in tort against the defendant containing five counts: intentional misrepresentation, intentional infliction of emotional distress, negligence, battery in the form of sexual assault, and interference with familial relations. The last count is derived from the fact that at the time of conception, the plaintiff was married to another woman, and they in turn had a child of the marriage.

The plaintiff seeks special damages consisting in part of the amount of support to be ordered against him, the cost of various blood tests associated with the paternity action, counsel fees, medical expenses connected with psychiatric care and medicines, as well as damages for emotional distress. All of this is based upon a theory of liability which he asserts as sound common law but which the Trial Court (*O'Neill,* J.) found to be against public policy in this State.

The basis of the liability theory is that the plaintiff relied upon the assurances of the defendant when they engaged in consensual sexual relations that she had taken adequate contraceptive measures. The trial court heard the case on the pleadings including the defendant's motion to dismiss for failure to state a cause of action. After oral presentations by counsel, the trial court granted the motion to dismiss. We affirm.

In ruling on a motion to dismiss, the trial court must assume as fact all well-pleaded allegations and all reasonable inferences drawn therefrom as construed most favorably to the plaintiff, *ERG, Inc. v. Barnes,* 137 N.H. 186, 190, 624 A.2d 555, 558 (1993), and decide whether the "allegations are reasonably susceptible of a construction that would permit recovery." *Jaswell Drill Corp. v. General Motors Corp.,* 129 N.H. 341, 346, 529 A.2d 875, 878 (1987). The trial court properly applied that standard in this case.

The trial court dismissed the plaintiff's cause of action, concluding that "as a matter of public policy the use of birth control by consenting sexual partners is best left to the individuals free from governmental interference." Because the policy grounds subsume the five separate counts contained in the writ, we address only the policy argument.

The considerations in making policy declarations are many and varied. The business of declaring policy is a power that we share with the legislature, and in cases where we are bereft of any guidelines as to the collective consciousness of society, we defer to the legislature. The matter at hand, however, is not such a case.

A brief historical note from our writings is helpful in resolving the issue before us. In *Welch v. The Frisbie Memorial Hospital,* 90 N.H. 337, 9 A.2d 761 (1939), we observed that

[i]n this jurisdiction the declaration of public policy with reference to a given subject is regarded as a matter primarily for legislative action, and although judicial power undoubtedly exists to declare public policy unsupported by legislative announcement of it[,] the policy must be based on a thoroughly developed, definite, persistent and united state of the public mind. There must be no substantial doubt about it.

*Id.* at 340–41, 9 A.2d at 763–64 (citation, quotations, & ellipses omitted). Similarly, in *Heath v. Heath,* 85 N.H. 419, 159 A. 418 (1932), we noted that "[i]n the diversity of thought and views on the subject no established sentiment of general prevalence can be found to entitle it to declaration as a definite policy with fixed and set bounds." *Id.* at 426, 159 A. at 421. At an earlier time, in *Spead v. Tomlinson,* 73 N.H. 46, 59 A. 376 (1904), the court declared:

By "public policy" is intended the policy of the state as evidenced by its laws. When the issue is its policy in respect to any question, the only matters which can be considered are its constitution and statutes and the provisions of the common law as evidenced by the decisions of the courts; for the common law, modified by the constitution and statutes of the state, is the law of the state.

*Id.* at 58, 59 A. at 379.

These three cases all arise from situations where a claimant asserted that a particular course of tortious conduct warranted a remedy *as a matter of public policy.* In the absence of any articulated criteria for the court to make a declaration of public policy, it turned down each claim. The court emphasized by its rulings that it was without power to declare policy in the abstract. Such is not the case here.

The trial court found that the plaintiff conditionally set forth the requisite elements of two recognized causes of action: intentional misrepresentation and intentional infliction of emotional distress. The plaintiff relies on part I, article 14 of the New Hampshire Constitution as a guarantee of his right to litigate entitlement to damages on these two counts in his complaint. Such reliance is not well placed, however, because the substantive right to maintain actions in tort that is accorded solicitous protection by the State Constitution is the right to redress of *actionable* injuries. *Gould v. Concord Hospital,* 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985). The underlying inquiry in this case is whether the injuries claimed are in fact *actionable.* Public policy persuades us that they are not.

■ "Part I, article 14 does not guarantee that all injured persons will receive full compensation for their injuries. Where there exist compelling public policy reasons, a person injured by the negligence of another is in some instances barred from recovery altogether." *Estate of Cargill v. City of Rochester,* 119 N.H. 661, 665, 406 A.2d 704, 706 (1979) (citation omitted), *appeal dismissed,* 445 U.S. 921 (1980). The fact that the plaintiff's claims sound in both negligence and intentional tort does not alter the constitutional application.

The public policy considerations in this case are firmly in place and, like Robert Frost's stone wall, may be viewed with a purpose to determine what claims are walled in and what claims are walled out. Actions at law such as the plaintiff's plainly must fail when held up to the measuring stick of public policy.

The plaintiff relies on *Bonte v. Bonte,* 136 N.H. 286, 616 A.2d 464 (1992), to support his argument that his action is not barred by public policy. He maintains that *Bonte*'s sanctioning of a suit by a plaintiff against her mother for negligence during pregnancy was a logical extension of interfamilial and interspousal tort law supported by public policy considerations. The narrow confines of the *Bonte* rationale, however, do not avail the plaintiff.

■ The plaintiff argues that because he may have actions in the ordinary course against others for assault, intentional infliction of emotional distress, etc., it is logical to extend, as in *Bonte,* the right to maintain such actions against one's sexual partner where a healthy child is the result. It is here that his logic breaks down. The ordinary defendant tortfeasor has no inherent legal rights conferred upon him or her by the nature of the underlying event. Here the underlying event is the birth of a child, who together with its mother are clothed with myriad rights of support and redress by statute and common law. *See, e.g.,* RSA ch. 168-A (1994 & Supp. 1994); *Joanne P. v. Gary W.,* 122 N.H. 104, 441 A.2d 1161 (1982). It is readily apparent that public policy does not favor the extension of tort liability as the plaintiff suggests, but rather stands firmly against it. To permit such actions while simultaneously encouraging paternity actions for support flies in the face of all reason.

In some jurisdictions the putative father has interposed false representation claims like the one here as a defense against the mother's support claims. *See, e.g., L. Pamela P. v. Frank S.,* 449 N.E.2d 713, 715 (N.Y. 1983). Such attempts have failed. Some imaginative litigants have sought damages in an amount that equals the contemplated support. *See, e.g., Douglas R. v. Suzanne M.,* 487 N.Y.S.2d 244, 244 (Sup. Ct. 1985). They have failed as well. Attempts to recover compensatory or punitive damages from the father for falsely representing that he had a vasectomy have been equally

fruitless; public policy has not been applied discriminatorily. *See, e.g., C.A.M. v. R.A.W.,* 568 A.2d 556, 563 (N.J. Super. Ct. App. Div.), *appeal dismissed,* 604 A.2d 109 (N.J. 1990). In fact, attempts to recover on a theory such as the plaintiff's have been overwhelmingly rejected. *See Stephen K. v. Roni L.,* 164 Cal. Rptr. 618, 621 (Ct. App. 1980); *Beard v. Skipper,* 451 N.W.2d 614, 615 (Mich. Ct. App. 1990); Annotation, *Sexual Partner's Tort Liability to Other Partner For Fraudulent Misrepresentation Regarding Sterility or Use of Birth Control Resulting in Pregnancy,* 2 A.L.R.5TH 301 (1992).

Our decision today does not answer the question of the availability of damages for medical complications in a pregnancy resulting from a false representation of the father's sterility. *See, e.g., Barbara A. v. John G.,* 193 Cal. Rptr. 422, 431 (Ct. App. 1983). Nor does it address the compelling public policy to halt the spread of sexually transmitted diseases. *See, e.g., Kathleen K. v. Robert B.,* 198 Cal. Rptr. 273, 276 (Ct. App. 1984). It simply involves nonassaultive, consensual sexual intimacy; the birth of a healthy child; and the legislature's clear expression that a father be required to fulfill his support obligations.

"[T]he common law has recognized that life on this planet is not free from all risks." *Kingsbury v. Smith,* 122 N.H. 237, 240, 442 A.2d 1003, 1004 (1982). Some risks exist without the benefit of a legal remedy. To permit the plaintiff to proceed *on the facts of this case* would ignore strong public policy considerations unfavorable to him, lay the groundwork for the extension of such claims in the area of interspousal torts, ignore rights of privacy in constitutionally protected areas of "marriage, family and sex," *Stephen K. v. Roni L.,* 164 Cal. Rptr. at 621; *see also Eisenstadt v. Baird,* 405 U.S. 438, 453–55 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 485–86 (1965); *cf. Planned Parenthood v. Casey,* 112 S. Ct. 2791 (1992), and invite the courts into the bedrooms of the citizens of this State. If the plaintiff wishes to turn the forces against him by 180 degrees, he must make his case in the first instance in the legislature. *See State v. Cavanaugh,* 138 N.H. 193, 197, 635 A.2d 1382, 1385 (1993).

*Affirmed.*

All concurred.