**Merley Polo MURPHY and County of Olmsted, Respondents,**

v.

**John Dale MYERS, Appellant.**

**No. CX–96–1610.**

Court of Appeals of Minnesota.

April 8, 1997.

Raymond F. Schmitz, Olmsted County Attorney, Julie S. Voigt, Assistant County Attorney, Rochester, for Respondents.

Daniel J. Moulton, Moulton Law Office, Rochester, for Appellant.

Considered and decided by KLAPHAKE, P.J., and WILLIS and MANSUR,* JJ.

## OPINION

WILLIS, Judge.

John Myers appeals from the district court's judgment of paternity and denial of his motion to raise fraud and misrepresentation as affirmative defenses. He also alleges that the district court improperly considered the "best interests of the child" standard in adjudicating him as father. We affirm.

## FACTS

John Myers lived with Merley Polo Murphy for approximately three months in 1991. Myers admits that he and Murphy had sexual relations, but claims that he only agreed to such a relationship after Murphy claimed to have undergone sterilization surgery and showed Myers scars on her abdomen that she said were the result of a tubal ligation.

Myers ended the relationship with Murphy after she announced that she was pregnant. On May 7, 1992, Murphy gave birth to a daughter, M.M., and subsequently initiated a paternity and child support action against Myers. Olmsted County joined in the action to recover child support arrears for the four-month period following M.M.'s birth, during which Murphy received Aid to Families with Dependent Children (AFDC). The district court ordered blood tests, which showed a 99.97% probability that Myers was M.M.'s father.

In his answer, Myers raised fraud and misrepresentation as affirmative defenses. Before trial, he moved the court to allow the jury to consider his claim that Murphy had falsely represented to him that she had been sterilized and to order Murphy to provide a photograph of the scars on her abdomen. The district court denied Myers' motion, reasoning that (1) the defense of fraud was irrelevant as against the county and M.M., who, although not a party, had an interest in the proceedings, and (2) because child support had not yet been ordered, Myers had not established damage, an essential element of fraud, as against Murphy.

Following the denial of his motion, Myers waived his right to a jury trial. Based on the blood test results and the fact that Murphy engaged in sexual relations only with Myers during the period of conception, the district court found that Myers is M.M.'s father. Pursuant to the parties' agreement, the district court awarded custody of M.M. to Mur-

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

phy and referred child support issues to an administrative law judge for determination in a separate hearing. The administrative law judge ordered Myers to pay monthly support of $135, plus $540 to the county for AFDC reimbursement and $6210 in arrears to Murphy.

## ISSUES

1. Did the district court err in refusing to allow Myers to raise fraud and misrepresentation as affirmative defenses to paternity and to introduce evidence in support of these claims?

2. Did the district court improperly use the "best interests of the child" standard in determining paternity?

3. Did the district court err in finding that Myers is M.M.'s father?

## ANALYSIS

The Parentage Act, Minn.Stat. §§ 257.51–74 (1996), governs the determination of paternity. Interpretation of the Parentage Act is a question of law that this court reviews de novo. *In re Welfare of C.M.G.,* 516 N.W.2d 555, 558 (Minn.App.1994). The Parentage Act must be construed liberally to achieve its "remedial and humanitarian purposes." *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978).

### I.

The question of whether fraud and misrepresentation are available defenses to paternity is one of first impression in Minnesota. Although apparently no court has considered the specific issue of a mother's false claim of sterilization, several states have barred putative fathers from raising an affirmative defense that the mother falsely claimed to be taking birth control pills. *See Erwin L.D. v. Myla Jean L.,* 41 Ark.App. 16, 847 S.W.2d 45, 47–48 (1993); *Faske v. Bonanno,* 137 Mich.App. 202, 357 N.W.2d 860, 861 (1984); *L. Pamela P. v. Frank S.,* 59 N.Y.2d 1, 462 N.Y.S.2d 819, 449 N.E.2d 713, 715–16 (1983); *Hughes v. Hutt,* 500 Pa. 209, 455 A.2d 623, 625 (1983). State courts have also held that a father may not avoid or reduce child support liability by claiming that

a child's conception resulted from the mother's fraud, *see Beard v. Skipper,* 182 Mich. App. 352, 451 N.W.2d 614, 615 (1990); *Linda D. v. Fritz C.,* 38 Wash.App. 288, 687 P.2d 223, 227 (1984), *review denied,* 102 Wash.2d 1024 (Wash.1984); and that an adjudicated father may not subsequently bring a tort action for fraud or misrepresentation against the mother to recover the amount of support, *see Stephen K. v. Roni L.,* 105 Cal.App.3d 640, 164 Cal.Rptr. 618, 621 (1980); *Welzenbach v. Powers,* 139 N.H. 688, 660 A.2d 1133, 1136 (1995).

The courts that decided these cases relied on the unique nature of paternity and child support actions and on state policies promoting the determination of paternity and parental support of children. Nothing in Minnesota case law differentiates this state from others in these regards. The purpose of a paternity action is not to punish the father, but rather

to impose a duty on the father to support the child, to ensure [that] the mother does not bear full financial responsibility for the child, and to protect the public by preventing the child from becoming a public charge.

*Jevning v. Cichos,* 499 N.W.2d 515, 517 (Minn.App.1993). A child's interests in an adjudication of paternity are "distinct and separate from those of both her mother and father." *R.B. v.C.S.,* 536 N.W.2d 634, 638 n. 2 (Minn.App.1995). In addition to issues of monetary support, a child has unique interests in the establishment of paternity for the purpose of securing legal rights such as inheritance, medical support, the ability to bring certain causes of action (e.g., wrongful death), workers' compensation dependent's allowances, and veterans' education benefits. *Johnson v. Hunter,* 447 N.W.2d 871, 875 (Minn.1989). A claim of fault in the child's conception is not relevant to these concerns.

Although adversarial in practice, the function of a paternity proceeding is essentially fact-finding. *See Spaeth v. Warren,* 478 N.W.2d 319, 322 (Minn.App.1991) (stating that "the purpose of a paternity action * * * is to legally determine a biological parent of a child"), *review denied* (Minn. Jan. 30, 1992). Minn.Stat. § 257.63, subd. 1 (1996), provides

that evidence relating to paternity may include (1) evidence that the mother and alleged father engaged in sexual intercourse at any possible time of conception, (2) the statistical probability of the alleged father's paternity based on the duration of the pregnancy or genetic and blood test results, (3) medical or anthropological evidence relating to paternity, and (4) "[a]ll other evidence relevant to the issue of paternity of the child." The evidence Myers seeks to introduce is irrelevant to the determination of paternity.

This court rejected an argument similar to Myers's in *Jevning*, in which we held that a putative father could not avoid the obligation to pay child support on the ground that the child was conceived when the father was only 15 years old and the mother more than 24 months older, making the father technically a victim of statutory rape. 499 N.W.2d at 518. This court accepted the policy reasoning of the district court:

> [If the court accepted defendant's argument,] the child would be deprived of obtaining a determination of his father; he would be denied support from a defendant who openly admits parentage; and the State would be forced to accept the burden of supporting the child despite the fact that paternity can be established. The Court cannot condone [the mother's] possible criminal actions, but holds that the child's interests in receiving support must supersede any economic consequences [appellant] suffers from [the mother's actions.]

*Id.* at 517–18. We also noted that "[s]upport is paid to benefit the child, not the custodial parent." *Id.* at 517. *Jevning* therefore weighs against recognition of Myers's proposed defenses to the extent that his desire to avoid being adjudicated M.M.'s father might stem from a desire to avoid child support obligations.

Further, in *Jevning* this court prevented the plaintiff from asserting a tort claim against his child's mother based on a claim

that, because he was 15 years old at the time and she was 20 years old, the mother acted negligently by having sexual intercourse with him. *Jevning*, 499 N.W.2d at 518. The appellant there relied on *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169 (Minn.1977), where the supreme court recognized a wrongful conception claim against a clinic for negligently performing a sterilization operation. After the *Sherlock* decision, the legislature acted to prohibit wrongful life and wrongful birth suits and to recognize wrongful conception suits only in the context of medical malpractice actions. 1982 Minn. Laws ch. 521, § 1 (codified as amended at Minn.Stat. § 145.424 (1996)). *Jevning* refused to extend *Sherlock* in light of section 145.424. 499 N.W.2d at 518; *see also Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 13 (Minn. 1986) (concluding that because of policy problems associated with wrongful birth claims and fact that such actions do not exist at common law, the establishment of such claims is within exclusive jurisdiction of the legislature). Myers's fraud and misrepresentation claims, although styled differently, are substantially similar to the tort claim rejected in *Jevning*.

■ Myers's argument also strongly resembles an equitable estoppel defense, which is an assertion that the plaintiff made representations or inducements on which the defendant reasonably relied, and that as a result of this reliance, the defendant would suffer harm unless the plaintiff's claim was estopped. *See McNattin v. McNattin*, 450 N.W.2d 169, 172 (Minn.App.1990). This court has held that, because of the need to protect a child's right to support, equitable estoppel is not available as a defense to the collection of child support arrears. *Faribault–Martin–Watonwan Human Servs. ex rel. Jacobson v. Jacobson*, 363 N.W.2d 342, 346 (Minn.App.1985).[1] The same policies prevent the application of an equitable estoppel defense to a paternity claim and to the

---

**1.** In *McNattin,* this court noted that although courts are not bound by a parent's agreement regarding child support, the district court correctly employed equitable estoppel where the mother induced the father to change custody of their child by representing that she would forego

child support. 450 N.W.2d at 172. But there, equitable estoppel was invoked not to avoid the legal duty of child support, but rather simply to enforce a promise in circumstances analogous to a contract negotiation, until and unless mother's circumstances changed. *See id.* at 171–72.

initial determination of child support and dictate that a putative father should not be allowed to raise a defense with the same elements under a different name. In any event, as the district court recognized, fraud, wrongful conception, or equitable estoppel would not apply against the state or against M.M., were she a party to the action. *See Johnson*, 447 N.W.2d at 877 (holding that "[u]nless a child's specific interests on paternity are addressed on the merits, a separate cause of action will be available to such child").

In summary, the other states that have considered the issue have unanimously barred the use of fraud and misrepresentation as defenses to paternity or child support obligations. The legislature and courts of Minnesota have stated a consistent policy in favor of determining paternity and collecting child support and have accordingly restricted the issues in paternity proceedings. The state has also rejected other claims substantially similar to Myers's, and, as the district court correctly noted, Myers's defense would at best be valid against only one of three potential plaintiffs. Because of all these factors, we affirm the decision of the district court to bar Myers from asserting fraud and misrepresentation as defenses to paternity.

## II.

■ In its adjudication of Myers as M.M.'s father, the district court made no reference to a "best interests of the child" standard. The court did, however, identify the child's best interests as a consideration in its denial of Myers's motion to raise fraud as a defense. Myers argues that consideration of the best interests standard was improper, citing *Spaeth*, in which this court found "no statutory requirement or directive to consider a child's best interests in adjudicating paternity." 478 N.W.2d at 322.

In *Spaeth*, however, we held only that the district court was not required to make a determination that initiating a paternity action would be in the child's best interests before allowing such an action to proceed because such analysis "simply [was] irrelevant to the biological determination." *Id.* at 323. The issue decided in *Spaeth* does not appear here because this paternity action was initiated before the district court gave any consideration to the best interests standard. The *Spaeth* holding provides no support for Myers's equitable arguments, which themselves have no bearing on the factual determination of paternity.

Furthermore, we held in *Spaeth* that a best interests analysis was not required at a particular stage of a paternity proceeding, not that it was barred as a consideration in any aspect of such a case. Indeed, this court has upheld consideration of the best interests standard in at least one paternity case subsequent to Spaeth. *See C.M.G.*, 516 N.W.2d at 560 (concluding that child's best interests is a valid policy consideration in resolving a conflict between competing presumptions of paternity). To the extent that the district court took M.M.'s best interests into account in deciding the policy question of whether to allow Myers's fraud claim, its actions were consistent with the general principle that "in cases involving the welfare of a minor child * * * the best interests of that child must be paramount." *Clay v. Clay*, 397 N.W.2d 571, 579 (Minn.App.1986), *review denied* (Minn. Feb. 17, 1987). In any event, any impropriety in the district court's consideration of the best interests standard in denying Myers's motion would not be reversible error because it does not affect the outcome. *Cf.* Minn. R.Civ.P. 61 (providing that harmless error to be ignored).

## III.

■ Because blood tests established a probability of paternity greater than 99%, with a prior probability of .5, Myers was legally presumed to be M.M.'s father under Minn.Stat. § 257.55, subd. 1(f) (1996). The party opposing paternity bears the burden to rebut the presumption by clear and convincing evidence that he is not the father. *Itasca County Social Servs. v. Pitzen*, 488 N.W.2d 8, 9 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992). Myers introduced no evidence to support a contention that he is not M.M.'s father. The district court did not err in adjudicating Myers to be the father and in

accordingly ordering determination of child support.

## DECISION

The district court did not err in denying Myers's motion to raise fraud and misrepresentation as affirmative defenses and in adjudicating Myers to be M.M.'s father.

**Affirmed.**