2001-NMCA-017

22 P.3d 682

**Peter WALLIS, Plaintiff–Appellant,**

v.

**Kellie Rae SMITH, Defendant–Appellee.**

No. 20,272.

Court of Appeals of New Mexico.

March 1, 2001.

Certiorari Denied, No. 26,857,
April 19, 2001.

Ashley Gauthier, Simone, Roberts & Weiss, P.A., Albuquerque, NM, for Appellant.

Paul J. Kennedy, Mary Y.C. Han, Albuquerque, NM, for Appellee.

## OPINION

BOSSON, Judge.

{1} Peter Wallis and Kellie Rae Smith were partners in a consensual sexual relationship. Allegedly, Smith misrepresented that she was practicing birth control when she was not, and Wallis unknowingly fa-

thered her child. Wallis sued Smith for money damages, asserting four causes of action—fraud, breach of contract, conversion, and prima facie tort—that the district court dismissed for failure to state a claim upon which relief may be granted. Wallis appeals that dismissal as well as a court order imposing a $1,000 sanction for improper use of subpoena authority. We affirm the dismissal, holding that under these facts, the causes of action are not cognizable in New Mexico because they contravene the public policy of this state. We reverse the imposition of sanctions under the circumstances of this case.

**BACKGROUND**

{2} The following facts are taken from Wallis's complaint, which we must assume to be true for the purpose of determining whether a complaint states a viable claim for relief. *See Padwa v. Hadley*, 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234.

{3} Wallis and Smith began an intimate, sexual relationship some time before April 1997. They discussed contraceptive techniques and agreed that Smith would use birth control pills. Wallis and Smith further agreed that their sexual intimacy would last only as long as Smith continued to take birth control pills because Wallis made it clear that he did not want to father a child. Wallis participated in contraception only passively; he relied on Smith to use birth control and took no precautions himself.

{4} As time went by, Smith changed her mind. She chose to stop taking birth control pills, but never informed Wallis of her decision. Wallis continued their intimate relationship, and Smith became pregnant. Smith carried the fetus to term and gave birth to a normal, healthy girl on November 27, 1998.

{5} Wallis alleges that he has suffered, and will continue to suffer, substantial economic injury as a proximate result of his unintended fatherhood because New Mexico law requires him to pay child support for the next eighteen years. *See* NMSA 1978, § 40–11–15 (1997). Due to his statutory obligations, Wallis asserts that he has been injured by Smith's conduct, and requests compensatory and punitive damages from her. The district court determined that public policy prohibited the relief sought by Wallis, and dismissed the case with prejudice.

**CONTRACEPTIVE FRAUD**

{6} A motion to dismiss for failure to state a claim under Rule 1–012(B)(6) NMRA 2001 tests the legal sufficiency of the complaint, not the facts that support it. *Environmental Improvement Div. v. Aguayo*, 99 N.M. 497, 499, 660 P.2d 587, 589 (1983). Under Rule 1–012(B)(6), dismissal is proper when the law does not support the claim under any set of facts subject to proof. We review rulings on such motions de novo, accepting all well-pleaded factual allegations as true and resolving all doubts in favor of the sufficiency of the complaint. *Padwa*, 1999–NMCA–067, ¶ 8, 127 N.M. 416, 981 P.2d 1234. Therefore, appellate review affords us an opportunity to examine anew the legal sufficiency of Wallis's suit, and determine whether his allegations, if proven, would entitle him to the relief requested in a New Mexico court.

{7} At the onset of our discussion it is important to distinguish the factual allegations of this case from other kinds of related lawsuits, and thus underscore the limited reach of this opinion. Wallis's complaint is not about sexually-transmitted disease, *e.g.*, *McPherson v. McPherson*, 712 A.2d 1043 (Me.1998), nor does it concern the damages arising from an unwanted pregnancy that led to an abortion, *e.g.*, *Alice D. v. William M.*, 113 Misc.2d 940, 450 N.Y.S.2d 350 (Civ.Ct. 1982), or an undesired pregnancy resulting in medical complications, *e.g.*, *Barbara A. v. John G.*, 145 Cal.App.3d 369, 193 Cal.Rptr. 422 (Ct.App.1983). This case is not even brought to recover the expense of giving birth. *E.g.*, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415, 417 (1995); *see also* § 40–11–15(C) (providing recovery for the "reasonable expenses of the mother's pregnancy, birth and confinement"). Wallis's complaint is limited to compensatory damages for the "economic injury" of supporting a normal, healthy child.

{8} Although Wallis insists that he is not attempting to circumvent his child support obligations, we cannot agree. It is self-evident that he seeks to recover for the very

financial loss caused him by the statutory obligation to pay child support. At oral argument when pressed by the Court to clarify what damages Wallis was seeking, his counsel stated that Wallis was seeking not punitive, but compensatory damages measured by his "out of pocket loss." Therefore, this case boils down to whether sound public policy would permit our courts to require Smith to indemnify Wallis for child support under the circumstances of this case.

{9} Our legislature has spoken to the public policy that governs the economic consequences of sexual relationships that produce children, and that policy is reflected in New Mexico child support laws. *See* NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 1997). In 1986, our legislature adopted, with minor revisions, the Uniform Parentage Act (UPA), which outlines the legal procedure to establish a parent-child relationship and the corresponding obligation of child support. *See* 1986 N.M. Laws, ch. 47, §§ 1–23; Unif. Parentage Act §§ 1–30, 9B U.L.A. 287 (West 1987). The UPA imposes a form of strict liability for child support, without regard to which parent bears the greater responsibility for the child's being. *See* Unif. Parentage Act § 15, 9B U.L.A. at 301–02. *See generally* Harry D. Krause, *Illegitimacy: Law and Social Policy* 79 (1971) (expressing the view held by a principal proponent and author of the UPA that men would assume individual responsibility in sexual relationships only when they risked incurring a substantial economic burden in the form of child support).

{10} Making each parent financially responsible for the conception and birth of children also illuminates a strong public policy that makes paramount the interests of the child. Our jurisprudence has abandoned the notion that the father of an "illegitimate" child could decline to accept the financial responsibility of raising that child. *Compare Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (per curiam) (holding that children born out of wedlock are entitled to the same support rights as marital children under the Equal Protection Clause of the Fourteenth Amendment), *and Stringer v. Dudoich,* 92 N.M. 98, 99, 583 P.2d 462, 463 (1978) (holding that all children are entitled

to support from each parent), *with Wallace v. Blanchard,* 26 N.M. 181, 191, 190 P. 1020, 1024 (1920) (holding that father of a child born out of wedlock has no duty of support). Currently, the state exercises its *parens patriae* authority to protect the best interests of all children by ensuring that the parents provide "an adequate standard of support." NMSA 1978, § 40–4–11.1(B)(1) (1995). Placing a duty of support on each parent has the added benefit of insulating the state from the possibility of bearing the financial burden for a child. *See* § 40–11–15(D). In our view, it is difficult to harmonize the legislative concern for the child, reflected in the immutable duty of parental support, with Wallis's effort in this lawsuit to shift financial responsibility for his child solely to the mother.

{11} New Mexico is not alone in its view of parental responsibility and the conflict created by lawsuits such as this. *See Welzenbach v. Powers,* 139 N.H. 688, 660 A.2d 1133, 1136 (1995) (holding that the public policy behind the right of child support "does not favor the extension of tort liability as the plaintiff suggests, but rather stands firmly against it"); *Douglas R. v. Suzanne M.,* 127 Misc.2d 745, 487 N.Y.S.2d 244, 245 (Sup.Ct.1985) (holding that fraud and deceit actions would render support obligations "nugatory"). To our knowledge, no jurisdiction recognizes contraceptive fraud or breach of promise to practice birth control as a ground for adjusting a natural parent's obligation to pay child support. *See Welzenbach,* 660 A.2d at 1136 (child support obligation defeats claim); *C.A.M. v. R.A.W.,* 237 N.J.Super. 532, 568 A.2d 556, 563 (1990) (claim disparages children); *Stephen K. v. Roni L.,* 105 Cal.App.3d 640, 164 Cal.Rptr. 618, 621 (1980) (right to privacy trumps claim); *Douglas R.,* 487 N.Y.S.2d at 245–46 (child support obligation defeats claim); *Moorman v. Walker,* 54 Wash.App. 461, 773 P.2d 887, 889 (1989) (claim disparages children). *See generally* Anne M. Payne, Annotation, *Sexual Partner's Tort Liability to Other Partner for Fraudulent Misrepresentation Regarding Sterility or Use of Birth Control Resulting in Pregnancy,* 2 A.L.R.5th 301 (1992). Wallis relies primarily on *Henson v. Sorrell,* No. 02A01–9711–CV–00291, 1999 WL 5630 (Tenn. Ct.App. Jan.8, 1999), an opinion which is

unreported in its own jurisdiction. *Henson* did not afford the relief Wallis seeks in this case. We thus reject the reasoning in *Henson* and find it wholly unpersuasive.

{12} Some courts have dismissed contraceptive fraud cases on the ground that the claims tread too far into the realm of an individual's privacy interests. *Stephen K.,* 164 Cal.Rptr. at 619, 621. We agree that individuals are entitled a sphere of privacy into which courts should not tread. A person's choice whether or not to use contraceptives understandably fits into this sphere. *See Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Padwa,* 1999–NMCA–067, ¶ 20, 127 N.M. 416, 981 P.2d 1234. We also believe that the "privacy interests involved … require a cautious approach," and therefore we elect to rely primarily on the prevailing public policy of child support, while at the same time recognizing the serious privacy concerns implicated and threatened by the underlying lawsuit. *Douglas R.,* 487 N.Y.S.2d at 245.[1]

{13} Wallis's attempt to apply traditional contract and tort principles to his contraceptive agreement is unconvincing and, in the end, futile. The contract analogy fails because children, the persons for whose benefit child support guidelines are enacted, have the same needs regardless of whether their conception violated a promise between the parents. *See Moorman,* 773 P.2d at 889 ("the moral responsibility for creating a human life is not voidable as if sex were a simple contractual transaction"). Further, a parent being sued for causing the conception and birth of a child is no ordinary tortfeasor; a defendant under these circumstances is legally entitled to collect financial support on behalf of the child. *See Welzenbach,* 660 A.2d at 1136. We will not re-enter the jurisprudence of illegitimacy by allowing a parent

to opt out of the financial consequences of his or her sexual relationships just because they were unintended. Nor will we recognize a cause of action that trivializes one's personal responsibility in sexual relationships. *See Moorman,* 773 P.2d at 889. Indeed, permitting "such actions while simultaneously encouraging paternity actions for support flies in the face of all reason." *Welzenbach,* 660 A.2d at 1136. We also observe that if Wallis did not desire children, he was free and able to practice contraceptive techniques on his own. *See Stephen K.,* 164 Cal.Rptr. at 621 ("no good reason appears why he himself could not have taken any precautionary measures"); *L. Pamela P. v. Frank S.,* 59 N.Y.2d 1, 462 N.Y.S.2d 819, 822, 449 N.E.2d 713 (1983) ("mother's conduct in no way limited [father's] right to use contraception").

{14} Wallis tries to make the basis for liability not so much the birth of the child, but the fact that Smith lied, and perpetrated a fraud on him. *See* Paula C. Murray & Brenda J. Winslett, *The Constitutional Right to Privacy and Emerging Tort Liability for Deceit in Interpersonal Relationships,* 1986 U. Ill. L.Rev. 779, 832 (advocating recognition of contraceptive fraud suits). But not all misrepresentations are actionable. *See In re Estate of Lord,* 93 N.M. 543, 602 P.2d 1030 (1979) (holding that a woman's failure to fulfill a promise to devise her estate to a man in exchange for marriage was not judicially enforceable for public policy reasons); *cf. Scanlon v. Scanlon,* 60 N.M. 43, 56, 287 P.2d 238, 247 (1955) (voiding terms of prenuptial contract that allowed husband to terminate his wife's support if he remarried or terminated his employment with the military). Equally problematic for Wallis is that it is impossible to calculate damages without considering the birth of the child. Because the legislature has declared the public policy governing the sexual relationships of adults in our child support laws, any claim that undermines that legislative policy cannot go for-

---

1. Although we embrace the rationale of the special concurrence, we want to clarify that by focusing on damages we do not mean to suggest, in the words of the special concurrence, that "we accept Wallis's argument that Smith's alleged commitment to practice birth control gave rise to legally-enforceable rights." We elect to rely primarily on the public policy of child support, and

its message of personal responsibility. By choosing to focus on privacy, the special concurrence invokes rights of constitutional magnitude. *Griswold,* 381 U.S. at 485, 85 S.Ct. 1678. Historically, we decide cases, if we can, by avoiding constitutional questions. *Schlieter v. Carlos,* 108 N.M. 507, 510, 775 P.2d 709, 712 (1989).

ward. *Cf. Solon v. WEK Drilling Co.,* 113 N.M. 566, 573, 829 P.2d 645, 652 (1992) (Ransom, C.J., specially concurring) (holding that common-law actions brought by the parents of the deceased for economic damages and loss of consortium are barred as a matter of public policy by the wrongful death act, which allows only dependants to collect damages from employer).

{15} Finally, Wallis argues that our courts have recognized tort claims which measure damages by the economic injury of supporting an unwanted child. *See Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 345, 805 P.2d 603, 612 (1991). However, *Lovelace* does not stand for the proposition that one parent can sue the other for the costs of raising a child. *Lovelace* held that a doctor has a duty to inform a couple that a surgical procedure to render one partner sterile was not successful, and the court determined the extent to which damages flow from the breach of that duty resulting in the birth of a healthy child. *See id.* at 342, 805 P.2d at 609. The court in *Lovelace* also held that a couple who sought to protect their financial resources by limiting the size of their family through sterilization could sue for economic damages measured by the cost of raising an additional child to the age of majority. *See id.* at 345–46, 805 P.2d at 612–13. The damages sought compensated parents for what they were expending to support their child by identifying fault in a third party, not in each other. Therefore, *Lovelace* does not implicate the public policy of individual responsibility and liability illustrated in the UPA and our child support statutes. Because *Lovelace* does not speak to the issue of inter-parental liability, which is the crux of Wallis's appeal, it has no bearing on our decision.

■ {16} Accordingly, we hold that the actions asserted here cannot be used to recoup the financial obligations of raising a child. We emphasize that this holding is gender neutral insofar as it precludes a monetary reimbursement for child support. *See, e.g., Stephen K.,* 164 Cal.Rptr. at 618–19 (dismissing man's claim of contraceptive fraud against a woman); *C.A.M.,* 568 A.2d at 556 (dismissing a woman's claim of contraceptive fraud against a man).

## DISCOVERY ABUSE

{17} After Smith filed a motion to dismiss the complaint, but before the motion was ruled on, Wallis embarked on the discovery phase of his case. Wallis sent Smith interrogatory questions in which he asked her to provide the names of all of her medical providers for the past ten years, and included a general medical release for Smith to endorse. Smith objected to the breadth and time-frame of the medical release, and she substituted a release limited to the time that she deemed relevant to the case—from March 1995 forward. After Smith declined to sign the general medical release, Wallis issued subpoenas to all of Smith's medical care providers for all her health records without limitation. It appears from the record that Wallis served subpoenas on Smith's medical providers on Monday, December 7, 1998. Smith's counsel received notice from Wallis on Wednesday, December 9, 1998, that the subpoenas had been issued. On Friday, December 11, 1998, Smith's counsel filed a motion to quash the subpoenas with a request for sanctions. Despite Smith's best efforts to prevent the disclosure of her medical records, at least one health care provider delivered the records to Wallis, although the date of disclosure does not appear in the record. After a hearing, the court granted Smith's motion to quash the subpoenas and sanctioned Wallis with a $1,000 fine for seeking the materials by a subpoena after Smith had raised a privilege objection.

{18} Wallis contends that the imposition of sanctions was inappropriate because Rule 1–045 NMRA 2001 allows counsel to subpoena documents over a party's objection in lieu of filing a motion to compel the discovery. Smith, in turn, insists that once she asserted her privilege, Wallis should have filed a motion to compel discovery instead of issuing subpoenas. Smith argues that unless counsel is required to file a motion to compel, an attorney can bypass the court by issuing a subpoena under Rule 1–045 and potentially obtain discovery before a timely motion to quash the subpoena is ruled on by the court. As this case demonstrates, Smith's argument is more than hypothetical.

{19} Parties to law suits have many discovery tools at their disposal, including the use of interrogatories under Rule 1–033 NMRA 2001, and the authority to subpoena documents under Rule 1–045. Rule 1–026(A) NMRA 2001 (listing the various methods of discovery). Here, Wallis began discovery by sending Smith an interrogatory seeking her medical history for the last ten years. However, Smith asserted her physician-patient privilege and objected to the scope of the information Wallis requested. The appropriate response for Wallis after Smith objected to the interrogatory was to "move for an order under Rule 1–037 [NMRA 2001] with respect to any objection." Rule 1–033. As a court dealing with this very issue has observed, when a party timely objects to the discovery of information, "all efforts at obtaining discovery of that information should cease until the discovery dispute is resolved." *Keplinger v. Virginia Electric and Power Co.*, 208 W.Va. 11, 537 S.E.2d 632, 646 (2000) (holding that a party may not use Rule 1–045 to subpoena records that are subject to an ongoing discovery dispute not resolved by the court). Were we to conclude otherwise and allow the use of Rule 1–045 to circumvent the discovery objection, "the discovery rules and the protections afforded by them [would be] rendered meaningless." *Id.*

{20} All discovery, including discovery under Rule 1–045, is limited by Rule 1–026 to the acquisition of information "regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." Rule 1–026(B)(1) (emphasis added). Thus, once a privilege is asserted in response to interrogatories, counsel cannot unilaterally disregard the privilege and then issue subpoenas to sidestep the procedure outlined in Rule 1–033 for resolving the dispute. "[S]uch a practice is fundamentally unfair and violates all sense of civility and decency." *Keplinger*, 537 S.E.2d at 646. As this case amply demonstrates, using subpoenas in this manner exposes a person asserting a privilege to the possibility that third-party medical providers will turn over the medical records notwithstanding an objection. Given the confidential and personal nature of medical records, parties to litigation should not have to tolerate such a risk.

Therefore, we hold a party may not use Rule 1–045 to pursue discovery of material that is subject to an ongoing discovery dispute that has not been resolved by the parties or decided by the court. *Id.*

{21} We acknowledge that the rules of civil procedure, as recently amended, are not expressly clear on this point and that requires a certain amount of tolerance. Although the trial court correctly interpreted the law, we conclude it would be unfair to uphold the sanction awarded in this case under these circumstances. Because the cause of action was properly dismissed, discussion of the merits of the privilege is unnecessary.

## CONCLUSION

{22} For the foregoing reasons, we hold that Wallis's legal claims against Smith are not cognizable in New Mexico courts because they contravene the public policy of this state. We also reverse the imposition of a $1,000 sanction for discovery violations.

{23} **IT IS SO ORDERED.**

WE CONCUR: M. CHRISTINA ARMIJO, Judge, A. JOSEPH ALARID, Judge (specially concurring).

ALARID, Judge (specially concurring).

{24} While I agree with the majority that the trial court should be affirmed, I am concerned that the majority opinion, by focusing on the issue of damages, may suggest to the reader that we accept Wallis' argument that Smith's alleged commitment to practice birth control gave rise to legally-enforceable rights. I write separately to emphasize my concern that the causes of action proposed by Wallis intrude on fundamental privacy interests.

{25} In recent years, New Mexico courts have given substantial weight to privacy interests when confronted with arguments urging the extension of existing causes of action to intimate interpersonal behavior. *See Padwa v. Hadley*, 1999–NMCA–067, 127 N.M. 416, 981 P.2d 1234 (declining to recognize tort cause of action based on defendant's pattern of seducing plaintiff's former sex

partners); *Hakkila v. Hakkila,* 112 N.M. 172, 812 P.2d 1320 (Ct.App.1991) (reversing damages awarded to divorcing spouse for husband's intentional infliction of emotional distress); *see also Vigil v. Haber,* 119 N.M. 9, 888 P.2d 455 (1994) (rejecting rule that ownership of engagement ring should turn on respective fault of parties leading to broken engagement; commenting on unseemly spectacle in which parties reveal highly personal information in effort to demonstrate the other's fault); *Thompson v. Chapman,* 93 N.M. 356, 600 P.2d 302 (Ct.App.1979) (urging abolishment of tort of alienation of affections). These authorities suggest to me that causes of action which purport to regulate intimate interpersonal relationships are disfavored by New Mexico courts and that causes of action that intrude on the right of privacy must be supported by compelling countervailing considerations.

{26} If we recognize a claim based on intentional misrepresentation, we have started down the road towards establishing standards of conduct in reproductive relationships-one of the most important and private forms of interpersonal relations. In the absence of a clear balance favoring the imposition of legal duties of disclosure in reproductive relations between competent adult sex partners, candor in reproductive matters should be left to the ethics of the participants.

> [T]here are still many immoral acts which do not amount to torts, and the law has not yet enacted the golden rule. It is impossible to afford a lawsuit for every deed of unkindness or betrayal, and there is much evil in the world which must necessarily be left to other agencies of social control.

W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, *Prosser and Keeton on Torts* § 4 at 22 (5th ed.1984). In my view, Wallis has failed to demonstrate a clear balance in favor of recognition of a cause of action for contraceptive fraud/breach of promise to practice birth control.

{27} As the majority notes, the present case is materially distinguishable from *Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991), a case on which Wallis principally relies. *Lovelace* recognized that the costs of raising a child conceived as the result of an unsuccessful tubal ligation were a proper item of damages in a medical malpractice action. The basis of liability in such cases is the physician's breach of his professional duty to his patient. Thus, unlike the cause of action for contraceptive fraud proposed by Wallis, the cause of action in *Lovelace* did not depend on the establishment of standards of conduct governing freely-made sexual decisions between adults.

{28} Today, the Court establishes the principle that contraception is a non-delegable duty in New Mexico. I see nothing unfair in applying this rule to Wallis. Had Wallis bothered to investigate the state of the law prior to beginning a sexual relationship with Smith in April 1997, he would have learned that the overwhelming majority of jurisdictions considering the issue have refused to recognize a cause of action for economic damages stemming from contraceptive fraud/ breach of promise to practice birth control. The lesson of these cases is that sex partners are strictly liable for the support of any child they engender by voluntarily engaging in sexual activity. Laura W. Morgan, *Child Support Guidelines: Interpretation and Application* § 4.11[c] (2000 Supp.). Thus, even accepting Wallis' allegations that he extracted from Smith a commitment to practice birth control, Wallis would not have had a reasonable expectation that Smith's statements about her use of contraceptives gave rise to legally-enforceable rights.

{29} Lastly, Wallis concedes that his complaint alleges damages for purely economic loss. I express no opinion at this time as to whether privacy interests would outweigh other considerations so as to foreclose causes of action based upon tortiously-inflicted physical harm to a sex partner. *See, e.g., Kathleen K. v. Robert B.,* 150 Cal.App.3d 992, 198 Cal.Rptr. 273 (1984) (holding that right of privacy should not bar cause of action based upon sex partner's failure to advise other partner that he was infected with herpes).