This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37641

**JOSEPH H. PREWITT,**

Plaintiff-Appellant,

v.

**LOS LUNAS SCHOOLS BOARD OF EDUCATION d/b/a LOS LUNAS SCHOOL DISTRICT, and LOS LUNAS HIGH SCHOOL,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Judge**

Duhigg, Cronin, Spring & Berlin, P.A.
David M. Berlin
Robert A. Berlin
Albuquerque, NM

for Appellant

YLAW, P.C.
April D. White
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Plaintiff Joseph Prewitt appeals the district court's order granting Los Lunas Schools Board of Education and Los Lunas High School's (collectively, Defendants)

motion to dismiss based on immunity under the Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended 2020). We reverse and remand.

**BACKGROUND**

**{2}** Plaintiff alleged the following facts in his complaint.[1] Although Plaintiff was home-schooled and was not enrolled as a student at Los Lunas High School, he was a member of the high school cross country team. Defendants furnished a weight room to its student athletes, including Plaintiff, who were encouraged by coaches to use the equipment in the room. Defendants "required that spotters[2] be used while student athletes were operating or using various free weight equipment, benches[,] and machines." As evidence of this requirement, Defendants posted a list of rules on the weight room wall including a rule to "[a]lways [u]se a [s]potter."

**{3}** Plaintiff was performing sit-ups using a twenty-five-pound weight on a bench in the weight room without a spotter. As Plaintiff attempted to get off the bench, the weight slipped and fell, crushing one of his fingers. As a result of his injury, Plaintiff underwent several surgical procedures and incurred extensive medical expenses.

**{4}** Plaintiff filed suit, asserting that Defendants were negligent in failing to provide a spotter for Plaintiff. Specifically, Plaintiff alleged that "[t]he safe operation of [the] weight room . . . required that spotters be used while student athletes were operating or using various free weight equipment, benches[,] and machines." Plaintiff further alleged that Defendants had an "unwritten practice of not providing spotters for the student athletes using the weight room[,]" and claimed that this practice violated Defendants' posted rules requiring spotters and constituted negligent operation of the school building, thus waiving Defendants' immunity under Section 41-4-6(A) of the TCA.

**{5}** Defendants admitted that the safe operation of the weight room required the use of spotters but denied that it was negligent or had waived immunity under the TCA. Defendants filed a motion to dismiss on the ground that the facts alleged in the amended complaint were insufficient to support a waiver of immunity under Section 41-4-6. Specifically, Defendants argued that Plaintiff's complaint did not state a claim concerning the safety of the weight room, but rather presented a claim for failure to supervise students in the weight room for which there is no waiver of immunity under the TCA. The district court found that immunity from suit was not waived in this case and granted Defendants' motion to dismiss. This appeal followed.

---

1The factual background is taken from Plaintiff's first amended complaint. We disregard allegations contained in the original complaint to the extent the amended complaint fails to re-allege them. *See Griego v. Roybal*, 1968-NMSC-077, ¶ 8, 79 N.M. 273, 442 P.2d 585 (stating that "failure to re-allege allegations of an original pleading constitutes an abandonment of those allegations not re-alleged"); *see also* Rule 1-015(E) NMRA ("In every complaint, answer, or reply, amendatory or supplemental, the party shall set forth in one entire pleading all matters which, by the rules of pleading, may be set forth in the pleading, and which may be necessary to the proper determination of the action or defense.").

2A "spotter" is defined, in relevant part, as "one that looks or keeps watch[] such as . . . a person who assists another during exercise (as to prevent injury)[.]" *See Merriam -Webster Dictionary*, https://www.merriam-webster.com/dictionary/spotter (last visited May 28, 2020).

**DISCUSSION**

**Standard of Review**

**{6}** "A motion to dismiss for failure to state a claim under Rule 1-012(B)(6) NMRA . . . tests the legal sufficiency of the complaint, not the facts that support it." *Wallis v. Smith*, 2001-NMCA-017, ¶ 6, 130 N.M. 214, 22 P.3d 682. A district court may only grant such a motion "where it appears the plaintiff is not entitled to recover under any state of facts provable under the claim asserted in the complaint." *Young v. Van Duyne*, 2004-NMCA-074, ¶ 13, 135 N.M. 695, 92 P.3d 1269. "We review de novo a district court's order granting or denying a motion to dismiss[.]" *State Eng'r of N.M. v. Diamond K Bar Ranch, LLC*, 2016-NMSC-036, ¶ 12, 385 P.3d 626. In doing so, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71.

**The District Court Erred in Granting Defendants' Motion to Dismiss**

**{7}** The TCA provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived" by certain enumerated exceptions. Section 41-4-4(A). One such exception is for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-6(A). "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 9, 140 N.M. 205, 141 P.3d 1259. "For the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building." *Id.* ¶ 8. On the other hand, "a claim of negligent supervision, standing alone, is not sufficient to bring a cause of action within the waiver of immunity created by Section 41-4-6." *Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 8, 123 N.M. 353, 940 P.2d 459.

**{8}** The sole issue in this appeal is whether Plaintiff's claim fails to come within Section 41-4-6's waiver provision as a matter of law. Defendants argue, as they did below, that Plaintiff only raised a claim for negligent supervision, characterizing Plaintiff's complaint as raising a "singular allegation that [Defendants] failed to *enforce* the alleged rule requiring the use of spotters in the weight room[.]" (Emphasis added.) We disagree with this characterization, as Plaintiff's complaint alleged that Defendants had a "practice of not *providing* spotters for the students athletes using the weight room." (Emphasis added.) Plaintiff further alleged that this practice violated the posted rule requiring students to use spotters, a practice which—as Defendants admitted—was necessary for the safe operation of the weight room. As explained below, we conclude Plaintiff's allegations are sufficient to withstand Defendants' motion to dismiss.

**{9}** We focus our discussion on two cases to which the parties cite to support their respective positions involving more or less analogous circumstances to the ones in the instant case. Defendants argue that Plaintiff's claim is analogous to the claim for negligent failure to supervise children on a playground in *Espinoza v. Town of Taos*, 1995-NMSC-070, 120 N.M. 680, 905 P.2d 718. Plaintiff, on the other hand, argues that his claim is more analogous to the claim involved in *Leithead*, in which this Court held that a claim for negligent provision of lifeguard services at a municipal swimming pool fell under Section 41-4-6's waiver even though the claim involved elements of negligent supervision. *Leithead*, 1997-NMCA-041, ¶ 1. We agree with Plaintiff.

**{10}** In *Espinoza*, a child was injured when he fell from a slide on a playground at a town summer camp at a time when the camp employees were inattentive. 1995-NMSC-070, ¶¶ 2-3. The parents sued the town, contending that the absence of adequate supervision was a dangerous condition of the playground for which immunity had been waived. *Id.* ¶ 4. The district court granted summary judgment in favor of the town, and the parents appealed. *Id.* Our Supreme Court affirmed, holding that Section 41-4-6 did "not grant a waiver for claims of negligent supervision." *Espinoza*, 1995-NMSC-070, ¶ 8. In distinguishing the case from others in which our appellate courts had previously found waiver because the negligent conduct created an unsafe condition, the Court noted that "the negligent [supervision] itself did not create the unsafe conditions. The playground was a safe area for children. . . . [T]he playground itself, particularly the slide, was not a condition requiring supervision. Rather, it was the day-camp undertaking and not the condition of the premises that gave rise to duty." *Id.* ¶ 14.

**{11}** Following *Espinoza*, this Court decided *Leithead*. In that case, parents sued the City of Santa Fe on behalf of their six-year-old daughter when she nearly drowned in a city pool while in the care of a summer recreational program. 1997-NMCA-041, ¶¶ 2-4. Regulations at the pool required adult supervision for children younger than seven and shorter than forty-eight inches. *Id.* ¶ 2. However, the child—who did not know how to swim—was allowed to enter the pool without any inquiry as to her height or age because lifeguards at the pool failed to inform the recreational program counselors of these regulations. *Id.* ¶¶ 2-3. She was later found floating face down, with evidence showing that she had been floating in this fashion for four to five minutes before being discovered. *Id.* ¶ 3. Following a trial on the merits, the city appealed, arguing that the plaintiffs' claim was merely for negligent supervision for which there is no waiver of immunity. *Id.* ¶¶ 4, 7. This Court rejected the city's argument, holding that the plaintiffs' claim was much broader, and that the plaintiffs "correctly argue[d] that when City lifeguards did not adequately perform duties that were essential to public safety, they negligently operated the swimming pool and thereby created a condition on the premises that was dangerous to [the child] and the general public." *Id.* ¶¶ 8, 12. In so holding, we noted:

> A swimming pool without an adequate number of trained lifeguards creates a dangerous condition on the physical premises which affects the swimming public at large. In fact, lifeguard services are so essential to the safety of a swimming pool that they seem akin to other kinds of safety

equipment, such as lifelines and ladders, that are fundamental in making the premises reasonably safe for the swimming public. Failure to provide those services in reasonable quantity and quality . . . makes the premises unsafe giving rise to liability under Section 41-4-6 of the [TCA].

*Leithead*, 1997-NMCA-041, ¶ 15.

**{12}** Taken as true, Plaintiff's allegations bring the gravamen of his claim closer to *Leithead* than *Espinoza*. In this case, Plaintiff alleged that Defendants encouraged student athletes, such as Plaintiff, to use the weight room, which consisted of various free weight equipment, benches, and exercise machines. Recognizing that it was unsafe for students to lift weights or use the equipment without assistance, Defendants posted a sign requiring students to use spotters. However, Plaintiff alleged, Defendants had an unwritten practice of not providing spotters that violated Defendants' posted rules. Plaintiff further alleged that Defendants' failure to provide a spotter caused the injuries Plaintiff sustained while performing sit-ups on a bench with a twenty-five-pound weight.

**{13}** Unlike the playground in *Espinoza*, which "was not a condition requiring supervision," 1995-NMSC-070, ¶ 14, Plaintiff alleged, and Defendants admitted, it was unsafe for students to use the weight room without another person watching and physically assisting, if need be, the student lift and re-rack weights (i.e., a spotter). Use of the weight room was not akin to playing on safe playground equipment; it consisted of student athletes lifting heavy weights, weights which could, and indeed did in this case, cause significant injury if mishandled. In this sense, the weight room is more akin to the swimming pool in *Leithead*, as it is an area that requires the services of a third party to supervise and assist users in order to reduce the danger presented by the use of the premises.[3] Just as a lifeguard must keep diligent watch and be ready to dive into the water should someone appear to be drowning, so too must the spotter watch the weight lifter and be prepared to lend a helping hand should the weight prove too difficult to manage.

**{14}** To put it another way, the weight room—according to Plaintiff's allegations and Defendants' admission—could not be safely operated without spotters, and therefore, Defendants' failure to provide spotters arguably created a dangerous condition affecting all student athletes using the facility. *Cf. Leithead*, 1997-NMCA-041, ¶ 15 ("A swimming pool without an adequate number of trained lifeguards creates a dangerous condition on the physical premises which affects the swimming public at large."). For this reason, we conclude Plaintiff's allegations present more than a claim for mere negligent supervision but rather a claim for negligent failure to provide services necessary to safely operate the weight room—a claim which falls within the waiver provision of Section 41-4-6. *See Upton*, 2006-NMSC-040, ¶ 16 ("Section 41-4-6 waives immunity for the operation

---

3We do not mean to imply that all weight rooms and gyms are inherently unsafe without spotters but only that the weight room in this case—according to Plaintiff's allegations and Defendants' own admission—was unsafe without the use of spotters.

or maintenance of a public building, which may include proof of negligent acts of employee supervision that is part of the operation of the building.").

**{15}** Defendants dispute such a conclusion, pointing out that "the [c]omplaint is devoid of facts from which it could be reasonably inferred there was anything innately unsafe about the weight room." However, this ignores the fact that Defendants *admitted* that "[t]he safe operation of [the] weight room . . . required that spotters be used while student athletes were operating or using various free weight equipment, benches and machines." "Facts admitted in a pleading by an adverse party do not need to be proven." *Slemmons v. Massie*, 1984-NMSC-108, ¶ 7, 102 N.M. 33, 690 P.2d 1027. Given Plaintiff's allegations, which we must accept as true, *see Valdez*, 2002-NMSC-028, ¶ 4, and Defendants' admission, we conclude the district court improperly granted Defendants' motion to dismiss.[4]

**{16}** Defendants also rely on *Upton*, 2006-NMSC-040, and *Kreutzer v. Aldo Leopold High School*, 2018-NMCA-005, 409 P.3d 930, to argue that Plaintiff's claim fails to satisfy Section 41-4-6 because he did not allege many of the facts which were involved in *Upton* and were noticeably absent in *Kreutzer*. However, those cases involved significantly different situations. In *Upton*, a student died as a result of an asthma attack after her substitute teacher required her to participate in strenuous exercise during a physical education class in violation of an individualized education plan and school employees failed to administer CPR or call 911 in a timely manner. 2006-NMSC-040, ¶¶ 2-6. In *Kreutzer*, a student attacked another student in a high school parking lot that had no known history for being unsafe. 2018-NMCA-005, ¶¶ 2-9. Importantly, neither of these cases involved incidents that took place at a location that was inherently dangerous to use without the supervision and support of a third party. *See Upton*, 2006-NMSC-040, ¶ 19 (noting that "a school building is not as inherently dangerous as a swimming pool"); *Kreutzer*, 2018-NMCA-005, ¶ 77 (noting that "[t]he unsupervised public school parking lot in this case bears no similarity to a public swimming pool without the lifeguards and safety equipment required by regulations"). In light of Plaintiff's allegations and Defendants' admission concerning the necessity of spotters in order to safely operate the weight room, Defendants' reliance on these cases is misplaced.

## CONCLUSION

**{17}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{18}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

---

[4]We note that the questions of whether Defendants, in fact, had a duty to provide spotters and whether Defendants breached this duty are not before us at this time. Accordingly, we do not address these issues.

**KRISTINA BOGARDUS, Judge**

**BRIANA H. ZAMORA, Judge**