2003-NMCA-073

68 P.3d 961

**David DERRINGER, Plaintiff–Appellant,**

v.

**STATE of New Mexico, New Mexico Livestock Board, John Wortman, Director, Defendants–Appellees.**

No. 23,084.

Court of Appeals of New Mexico.

March 27, 2003.

Certiorari denied, No. 28,035, May 13, 2003.

**722**

David Derringer, Quemado, NM, Pro Se Appellant.

Sean Olivas, Melanie Frassanito, Keleher & McLeod, P.A., Albuquerque, NM, for Appellees.

William D. Winter, Dines, Gross & Esquivel, P.C., Albuquerque, NM, for Amicus Curiae New Mexico Foundation for Open Government.

William H. Carpenter, Albuquerque, NM, for Amicus Curiae New Mexico Trial Lawyers Association.

Randall D. Van Vleck, General Counsel, New Mexico Municipal League, Inc., Santa Fe, NM, for Amicus Curiae New Mexico Municipal League, Inc.

Daniel A. Bryant, Daniel A. Bryant, P.A., Ruidoso, NM, for Amicus Curiae New Mexico Association of Counties County Insurance Authority.

## OPINION

PICKARD, Judge.

{1} The Inspection of Public Records Act provides:

> C.  A custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection is subject to an action to enforce the provisions of the Inspection of Public Records Act and the requester may be awarded damages.  Damages shall . . . not exceed one hundred dollars ($100) per day [and] accrue from the day the public body is in noncompliance until a written denial is issued[.]

NMSA 1978, § 14–2–11(C)(2), (3) (1993).

> D.  The court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act.

NMSA 1978, § 14–2–12(D) (1993).   The question we must answer in this case is whether the statutory damages permitted by these sections may be awarded in a later action brought after the public body has complied with the Act. We hold that they may not.  We also discuss whether Plaintiff has a tort claim for prima facie tort or violation of constitutional rights and hold that he does not.  We finally discuss whether proper procedure was followed in the proceedings below and hold that it was.  We therefore affirm the dismissal of Plaintiff's complaint.

**FACTS AND PROCEEDINGS**

{2} A stray horse wandered onto Plaintiff's land.  After unsuccessfully trying to locate the owner by calling neighbors, Plaintiff contacted the Livestock Board in Albuquerque. He contacted the Albuquerque office because he was concerned about the honesty of the local livestock inspector.  Some time later, one of the neighbors asserted ownership of the horse and arranged with the local livestock inspector to claim it from Plaintiff. Plaintiff was concerned with the procedures and papers by which this claim was made, and set out to prove what he alleged to be fraud by making requests to the New Mexico Livestock Board for information on the horse and the procedures by which it was reclaimed.

{3} Plaintiff's requests were made on November 29, 2000, January 4, 2001, February 1, 2001, and February 8, 2001.  The Board received the November 29 request on December 4 and responded on December 22, received the January 4 request on January 16 and responded on January 29, received the February 1 request on the same day and did not respond to it apparently because it thought its January 29 response complied with this request, and received the February 8 request on the same day and responded on February 28.  In February 2001, Plaintiff complained to the Attorney General about the Board's lack of compliance with his requests for information.  The Attorney General sought a response from the Board, following which she told the Board that it had not

fully complied with the Inspection of Public Records Act because its responses were untimely. However, she concluded that, while there was some miscommunication between Plaintiff and the Board, the Board had ultimately produced to Plaintiff everything in its possession that Plaintiff requested and therefore she would take no further action. The Attorney General concluded her investigation and report in May of 2001.

{4} On February 15, 2002, Plaintiff filed suit against the Livestock Board and its director (Defendants), alleging statutory violations of the Inspection of Public Records Act and prima facie tort. Prior to answering, Defendants moved to dismiss for failure to state a claim. Plaintiff filed a response, which included a motion for sanctions based on his view that Defendants' motion to dismiss was filed for the improper purposes of delay and obstruction. Following the filing of other pleadings, the district court entered an order granting Defendants' motion to dismiss and denying Plaintiff's motion for sanctions. Plaintiff appeals.

## STANDARD OF REVIEW

{5} A motion to dismiss for failure to state a claim, pursuant to Rule 1–012(B)(6) NMRA 2003, tests the legal sufficiency of the complaint, accepting all well-pleaded factual allegations as true. *Wallis v. Smith*, 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682. Dismissal is proper when the law does not support the claim under any set of facts subject to proof. *Id.* The "pleadings must tell a story ... from which ... the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred." *Ramer v. Place–Gallegos*, 118 N.M. 363, 365, 881 P.2d 723, 725 (Ct.App. 1994) (internal quotation marks and citation omitted), *overruled on other grounds by Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997–NMCA–025, ¶ 31, 123 N.M. 170, 936 P.2d 852. We review rulings on Rule 1–012(B)(6) motions de novo. *Wallis*, 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682.

## DISCUSSION

### Damages for Violation of the Inspection of Public Records Act

{6} The Attorney General determined, and Defendants do not dispute, that the Board did not fully comply with the Inspection of Public Records Act between November 2000 and February 2001. The Attorney General also determined that upon the last mailing from the Board on February 28, 2001, the Board had furnished or provided access to all of the documents in its possession that Plaintiff had requested, meaning that the Board was in substantive compliance with the Inspection of Public Records Act at that time. Plaintiff filed his complaint on February 15, 2002, nearly a year after his request for documents had been satisfied.

{7} Plaintiff and Amici New Mexico Foundation for Open Government and New Mexico Trial Lawyers Association contend that Section 14–2–11 of the Act must be interpreted to award damages for the Livestock Board's delay in permitting inspection of public records, lest the government be allowed to delay and obfuscate requests so as to defeat the intention of the Legislature. Defendants assert that the plain language of the Act does not allow for damages when no action has been brought to enforce the provisions of the Act. We agree with Defendants.

{8} Questions of statutory interpretation are reviewed de novo. *Gordon v. Sandoval County Assessor*, 2001–NMCA–044, ¶ 12, 130 N.M. 573, 28 P.3d 1114. "A statute should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977). If the meaning is plain, we give effect to the statute's language and refrain from further interpretation unless "the intentions of the legislature suggest a different meaning from that suggested by the plain meaning of the statute." *Sims v. Sims*, 1996–NMSC–078, ¶¶ 17, 21, 122 N.M. 618, 930 P.2d 153.

{9} The purpose of the Act is to "ensure ... that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." NMSA 1978, § 14–2–5 (1993). The Act further states that providing such information is an "essential func-

tion of a representative government." *Id.* Our Supreme Court has held that a citizen has a fundamental right to have access to public records, and when there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. *Newsome,* 90 N.M. at 797, 568 P.2d at 1243.

{10} The procedure for denied requests, noted above, plainly states that a custodian who does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request, "is subject to an action to enforce the provisions of the Inspection of Public Records Act and the requester may be awarded damages." Section 14–2–11(C). The language, "is subject to an action to enforce the provision," is not independent from the rest of the sentence, nor is it set off by a comma or a semicolon, so it is not a separate clause or idea. Plainly, this provision provides a citizen with the means to enforce the Act *if* the public body does not comply. Conversely, then, once the custodian complies, the public body is no longer subject to an enforcement action. Contrary to Plaintiff's assertion that he should be awarded damages even if he is not bringing an action to force compliance with the Act, it is only in the event that a court action is brought to enforce the Act that a plaintiff is awarded mandatory costs, fees, and damages, and then only if the plaintiff is successful in that action. *See* § 14–2–12(D).

{11} By requiring that each public body have a public records custodian, *see* NMSA 1978, § 14–2–7 (2001), and requiring compliance immediately, but no later than fifteen days, *see* NMSA 1978, § 14–2–8(D) (1993), the legislature's focus was to provide prompt compliance. The sections at issue, Sections 14–2–11(C) and –12, are titled "Procedure for denied requests" and "Enforcement," both of which are necessary to achieve the legislative purpose of freely allowed, prompt compliance. Plaintiff's claim was not brought to enforce compliance with the Act because the Board had been in compliance for nearly a year when the complaint was filed.

{12} Plaintiff and Amici have not provided us with authority from any jurisdiction that interprets a statute substantively similar to ours. Even accounting for differences in the statutes, the cases on which they rely are distinguishable. Amici rely on a decision from the Supreme Judicial Court of Maine, which held that a school district's failure to respond to a request for documents was actionable under a freedom of information statute, and that costs were appropriate even though the school district produced the requested documents after a lengthy delay. *See Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 680 (Me.1996). We find this case to be inapposite, because the plaintiff in *Cook* amended her complaint to include her claim for failure to respond to a request for documents and the amendment occurred *before* the school district complied with the act. *Id.* at 679. Thus, her action was, in effect, one for enforcement. Indeed, every authority that Amici rely upon for their argument that a plaintiff is entitled to statutory penalties, even if the public body eventually responds, presents the same fact pattern: the public body responded to the request for documents *after* the plaintiff commenced an action for compliance. *See Mazer v. Orange County,* 811 So.2d 857, 859–60 (Fla.Dist.Ct.App.2002) (finding that though the issue of document production was moot, the issue of statutory fees was not moot because the plaintiff was required to hire an attorney and file suit before the agency complied); *Duncan Publ'g, Inc. v. City of Chicago,* 304 Ill.App.3d 778, 237 Ill.Dec. 568, 709 N.E.2d 1281, 1285 (1999) (same); *Campbell v. Town of Machias,* 661 A.2d 1133, 1135 (Me.1995) (determining, after the claim had been filed, that a government body cannot then moot a claim of violation of the statute by complying long after the request).

{13} Apparently, these courts have interpreted their respective statutes the way we interpret ours: enforcement, through a court action, may be necessary to force the public body to comply. As with New Mexico's statute, in the event that a plaintiff is forced to take such action, damages or costs or both can be awarded. *See* §§ 14–2–11, –12. We are not called upon today, as were the above-cited courts, to determine penalties for compliance after a lawsuit is filed. Our question is whether the Inspection of Public Records

Act allows damages when a lawsuit is filed nearly a year after compliance. We have determined that it does not.

■ {14} Finally, we observe that Plaintiff's lodging a complaint with the Attorney General did not initiate an action to enforce the Act. The statute states, "[a]n action to enforce the Inspection of Public Records Act ... may be brought by: (1) the attorney general or the district attorney in the county of jurisdiction; or (2) a person whose written request has been denied." Section 14–2–12(A). The term "action" is not defined in the Act, so we give it the usual, ordinary meaning, which in a legal sense means a lawsuit brought in court. *See* Black's Law Dictionary 18 (7th ed.1999). Requesting an investigation or alerting the Attorney General is certainly not inappropriate, because the statute allows the Attorney General to bring an action to enforce compliance. However, requesting an investigation by the Attorney General is not an action, brought in court, to compel compliance, as envisioned by the statute. We note too, that the Attorney General did not initiate a court action pursuant to Plaintiff's request, because the Attorney General determined that the Board was in substantive compliance at the time of her investigation. Furthermore, Plaintiff apparently did not make his complaint to the Attorney General until late February 2001, which was after the Board had substantively complied with the Act by responding to Plaintiff's request, making Plaintiff's complaint to the Attorney General also too late to recover damages pursuant to Section 14–2–11(C).

■ {15} We hold that, by its plain language, the Inspection of Public Records Act does not provide for damages pursuant to an action brought after a public body has complied with the Act. Accordingly, we affirm the trial court's dismissal of this claim pursuant to Rule 1–012(B)(6) for failure to state a claim upon which relief can be granted.

**Prima Facie Tort**

■ {16} Plaintiff's complaint included a claim for prima facie tort, which he argues was improperly dismissed. Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act. NMSA 1978, § 41–4–4(A) (1976, prior to 2001 amendment). Defendants Livestock Board and Director Wortman come within the definitions of "governmental entity" and "public employee." *See* NMSA 1978, § 41–4–3(B), (F) (1995). Prima facie tort is not included in the specific provisions of the Tort Claims Act and, therefore Defendants enjoy immunity from Plaintiff's claim. *See* NMSA 1978, §§ 41–4–5 to –12 (1976, as amended through 1991).

■ {17} Plaintiff argues that members of the Livestock Board were not acting within the scope of their duties when they denied him access to the requested records, and so they are not protected by the New Mexico Tort Claims Act. Plaintiff misunderstands the meaning of "scope of duties." The statute defines the term as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." Section 41–4–3(G). This Court has determined that "the legislature likely foresaw the possibility that a public employee could abuse the *duties* actually requested, required or authorized by his state employer[.]" *Risk Mgmt. Div. v. McBrayer*, 2000–NMCA–104, ¶ 17, 129 N.M. 778, 14 P.3d 43. "[I]t is equally likely that the legislature intended that those unauthorized acts would fall within the scope of duties as defined in the [Tort Claims Act]." *Id.* In *McBrayer*, we held that the phrase "scope of duties" in the Tort Claims Act differed from the common law term "scope of employment," and could encompass even criminal acts of an employee acting within the scope of his or her duties. *Id.* ¶¶ 2, 17. Accordingly, failing to perform a regular duty, such as timely responding to requests for records, still falls within the scope of duties as defined in *McBrayer*. There is no indication in the pleadings that the Livestock Board or Mr. Wortman was engaged in activities that would fall outside of their mandated duties pursuant to the Livestock Code, 1978 NMSA, §§ 77–2–1 to –29 (1967, as amended through 2001). We affirm the trial court's

dismissal of Plaintiff's claim of prima facie tort. Plaintiff has no claim because Defendants are immune from suit alleging prima facie tort.

### Violation of Constitutional Rights

{18} We understand Plaintiff's claims of violations of his rights under the New Mexico and United States Constitutions to be the result of what he believed to be the trial court's improper dismissal of his claims pursuant to Rule 1–012(B)(6). Because we have determined that the trial court's dismissal of his claims was proper, we do not reach Plaintiff's constitutional claims. To the extent that Plaintiff may be complaining that his due process and equal protection rights were violated by Defendants when they did not respond to his requests for information, the Tort Claims Act, as discussed above, does not waive immunity for such a claim.

### Motion to Dismiss

{19} Plaintiff contends that Defendants' submission of a motion to dismiss, pursuant to Rule 1–012(B)(6), instead of submitting an answer to his complaint, was unsupported, improper, and subject to sanctions pursuant to Rule 1–011 NMRA 2003. Plaintiff contests the trial court's denial of his motion for sanctions. We see nothing improper about the filing of a Rule 1–012(B)(6) motion prior to filing an answer to a complaint. The rule itself expressly allows for this course of action. *See* Rule 1–012(B) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."). Moreover, we have determined that the trial court did not err in dismissing Plaintiff's complaint on the Rule 1–012(B)(6) motion because neither claim supported a legal basis for which relief could be granted. Accordingly, there was no procedural impropriety and there is no basis for sanctions pursuant to Rule 1–011.

### Appreciation to Amici

{20} Finally, we wish to express our gratitude to all amici and their attorneys who were invited to participate in this case and who responded with briefs that were of great assistance to this Court.

## CONCLUSION

{21} We affirm.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.