This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NORBERT A. SCHUELLER,**

    Plaintiff-Appellant,

v.
                                          **NO. 34,598**

**REVEREND STEPHEN SCHULTZ,**
**NORBERT MOYA, and ROMAN**
**CATHOLIC ARCHDIOCESE OF**
**SANTA FE,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John F. Davis, District Judge**

Norbert A. Schueller
Belen, NM

Pro Se Appellant

Brown Law Firm
Brown & Gurulé
Daniel J. Macke
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**VANZI, Judge.**

**{1}** Norbert Schueller (Plaintiff), a self-represented litigant, appeals the district court's grant of Defendants' motion to dismiss for failure to state a claim pursuant to Rule 1-012(B)(6) NMRA. We affirm the dismissal of Plaintiff's complaint against Defendants Reverend Stephen Schultz and the Roman Catholic Archdiocese of Santa Fe.[1]

**BACKGROUND**

**{2}** On March 15, 2014, Plaintiff, a registered parishioner of Our Lady of Belen Roman Catholic Church in Valencia County, hand-delivered a letter to Defendant Schultz in his capacity as a Catholic priest. Plaintiff delivered the letter to Defendant Schultz just outside the confessional in the church. The three-page letter accused Defendant Schultz of being "the most self-absorbed, without-a-clue, insensitive, materialistic priest [that Plaintiff had] ever met" and stated that "[Defendant Schultz] and [his] sycophants obviously don't give a damn about those of us who are poor and old and mobility challenged." The letter continued throughout in a similar critical vein, suggesting as well that "[m]aybe the new Archbishop, when appointed, will have the intestinal fortitude to remove you as pastor and put you in a strict cloister, like the Trappists or the Carthusians." At the end of the letter, Plaintiff attached two pennies

---

[1]Defendant Norbert Moya was dismissed without prejudice in the district court, and he is not part of this appeal.

with a hand-written note stating, "your tip for being such a good pastor." Cardinal Stella and Archbishop Vigano were copied on the correspondence.

{3} Plaintiff's complaint alleged that Defendant Schultz revealed the contents of the letter to Norbert Moya, a "non-clerical layman," and that Moya subsequently accosted Plaintiff at a local restaurant. In betraying Plaintiff's confidence by disclosing what the letter said about Defendant Schultz, and because of Moya's participation in that betrayal, Plaintiffs says that he "has an elevated and complete distrust of Catholic diocesan clergy in general, which had led to [his] diminished use/reception of the Sacraments." On these facts, Plaintiff brought claims for negligent and intentional infliction of emotional distress (Count I), defamation (Count II), and punitive damages (Count III). Only Counts I and III are at issue in this case as the defamation claim was asserted solely against Moya.

{4} Defendants Schultz and the Roman Catholic Archdiocese of Santa Fe filed a motion to dismiss Plaintiff's complaint pursuant to Rule 1-012(B)(6). Specifically, Defendants argued that the district court lacked jurisdiction to hear the case under the church autonomy doctrine and that the intentional infliction of emotional distress claim failed on the merits because New Mexico does not recognize such a claim except in cases of bystander liability and Defendant's conduct was not extreme and outrageous. After briefing and a hearing, the district court took the case under advisement and subsequently entered an order granting Defendants' motion. The order

3

did not specify the basis for the court's decision. Plaintiff now appeals the dismissal of his claims against Defendants Schultz and the Roman Catholic Archdiocese of Santa Fe.

**DISCUSSION**

**Standard of Review**

**{5}** "A motion to dismiss for failure to state a claim under Rule 1-012(B)(6) . . . tests the legal sufficiency of the complaint, not the facts that support it." *Wallis v. Smith*, 2001-NMCA-017, ¶ 6, 130 N.M. 214, 22 P.3d 682. "For purposes of the motion, the well-pleaded material allegations of the complaintl, or petition, are taken as admitted." *Villegas v. Am. Smelting & Ref. Co.*, 1976-NMCA-068, ¶ 4, 89 N.M. 387, 552 P.2d 1235. We regard dismissal under Rule 1-012(B)(6) as proper only when the law does not support the claim under any set of facts subject to proof. *Wallis*, 2001-NMCA-017, ¶ 6. All that is required is that "the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred." *Derringer v. State*, 2003-NMCA-073, ¶ 5, 133 N.M. 721, 68 P.3d 961 (internal quotation marks and citation omitted). "We review rulings on Rule 1-012(B)(6) motions de novo." *Id.*

**{6}** We understand Plaintiff's arguments on appeal to be that he alleged sufficient facts to support a claim for intentional infliction of emotional distress and for common law negligence for which relief could be granted. He further contends that the district court erred in dismissing his claims under the church autonomy doctrine and by not

4

treating Defendants' motion to dismiss as a motion for summary judgment for which disputes of fact existed. We are not persuaded.

{7} We begin with Plaintiff's claim for intentional infliction of emotional distress because this issue is dispositive. As a preliminary matter, although Count I of Plaintiff's complaint claimed both intentional and negligent infliction of emotional distress, he appears to have abandoned his claim for negligent infliction of emotional distress (NIED) both at the district court and on appeal. To be sure, our Supreme Court has stated that "NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 6, 126 N.M. 263, 968 P.2d 774. Plaintiff essentially concedes that he has not alleged any facts supporting bystander liability and, therefore, he fails to state a claim for NIED. We next determine whether, as a matter of law, Defendant Schultz's conduct of revealing the contents of Plaintiff's letter to a third person reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress (IIED).

{8} The tort of IIED "provides recovery to victims of socially reprehensible conduct[.]" *Baldonado v. El Paso Nat. Gas Co.*, 2008-NMSC-005, ¶ 24, 143 N.M. 288, 176 P.3d 277 (internal quotation marks and citation omitted). In that regard, our Supreme Court has limited recovery for IIED to claims in which the plaintiff can

establish, among other things, extreme and outrageous conduct. *See Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333. As the *Trujillo* Court noted, the "Restatement [(Second) of Torts § 46 cmt. d (1965)] describes extreme and outrageous conduct as that which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Trujillo*, 2002-NMSC-004, ¶ 25. The "outrageous conduct" requirement is a high standard that our courts have consistently regarded as a significant limitation on recovery. *See id.* "Accordingly, the mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability." *Padwa v. Hadley*, 1999-NMCA-067, ¶ 11, 127 N.M. 416, 981 P.2d 1234.

{9} This case simply does not resemble the types of cases in which our courts have determined that a defendant's conduct was so outrageous as to permit an IIED claim. For example, in *Baldonado*, a gas explosion resulted in a fireball and killed twelve members of an extended family. 2008-NMSC-005, ¶ 3. The plaintiff firefighters claimed that the defendant gas company had failed to properly design and maintain gas pipelines, had been earlier cited for the failure, and that such failure had resulted in two other explosions. *Id.* ¶¶ 2, 35. This knowledge, coupled with the defendant's obligations under federal law to actively cooperate with firefighters, supported the Court's conclusion that the defendant's conduct was extreme and outrageous. *Id.*

6

¶¶ 33, 36. In contrast, the facts supporting Plaintiff's IIED claim bear no relation to the extreme and outrageous conduct described above.

{10} Here, Plaintiff alleged that he hand-delivered a letter to Defendant Schultz who disclosed the contents of that letter to a third party. As a result of the disclosure, Plaintiff claims he has been "demoralized, dispirited, and psychologically/emotionally traumatized" and that his "biorhythm patterns have drastically/dramatically changed, which has resulted in loss of sleep, loss of appetite, disruption of bodily functions and exacerbation of arthritic pains in [his] joints." As we have noted, the letter, which directly impugned Defendant Schultz's credibility, integrity and professionalism, was not made in the context of a confessional, was not marked confidential, and was copied to two other individuals within the church. Under the circumstances, we cannot conclude that the disclosure of the letter's contents—by the person being derided in it—supports a cause of action for IIED by the *author* of the letter. In our view, this type of occurrence rarely, if ever, rises to the level of being "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Trujillo*, 2002-NMSC-004, ¶ 25 (internal quotation marks and citation omitted). Plaintiff has not pointed to evidence of any other specific instance in which Defendant Schultz's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. Moreover, Plaintiff fails to cite any authority recognizing an IIED claim under the factual scenario here, so we presume none exists. *See In re*

*Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. This Court will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. Plaintiff has not established a claim for IIED as a matter of law in this case.

{11} In light of our conclusions above, we need not reach Plaintiff's remaining arguments. We briefly address, however, whether Plaintiff has stated a claim for common law negligence. As a general matter, damages for emotional distress in ordinary negligence are not permitted in New Mexico. *Flores v. Baca*, 1994-NMSC-021, ¶ 21, 117 N.M. 306, 871 P.2d 962. However, we sua sponte asked the parties to brief the issue in our calendaring notice. In particular, we directed the parties to address whether such a cause of action exists pursuant to *Alexander v. Culp*, 705 N.E.2d 378, 381 (Ohio Ct. App. 1997). For the reasons that follow, we conclude that the facts of that case are sufficiently distinguishable such that it does not. We explain.

{12} In *Alexander*, the plaintiff met with the defendant, a minister at a church, for marital counseling. *Id.* at 379. The plaintiff asked the defendant whether his disclosures would be kept confidential, and she assured him they would be. *Id.* The plaintiff then confided to the defendant that he had several affairs during his marriage, including one that was on-going. *Id.* Sometime thereafter, the defendant met with the plaintiff's wife for lunch and told her that the plaintiff was having an affair, that he was a liar, and was not to be trusted. *Id.* She also advised the plaintiff's wife to get a

restraining order, change the locks on the house, divorce the plaintiff, and keep the children away from him. *Id.* at 379-80.

{13} The *Alexander* plaintiff asserted that the defendant had a duty, arising out of the minister/parishioner relationship, to maintain confidentiality and that the defendant breached that duty by disclosing the information to his wife and her family. *Id.* at 381. The Ohio Court of Appeals agreed, holding that the plaintiff had stated a cause of action for common law negligence. *Id.* at 380-81. The court first noted that the breach of the duty to preserve the plaintiff's confidences did not involve or compromise any religious tenets. *Id.* at 382. It then concluded that there is a public policy—as expressed in an Ohio statute—encouraging people to seek religious counseling and a concomitant expectation that any disclosures will be kept confidential. *Id.* Thus, under Ohio law, public policy may support an action for breach of confidentiality by a minister under certain circumstances. *Id.* at 381.

{14} This case bears no resemblance to *Alexander*. There is no statutorily created public policy or case creating a duty to maintain the type of confidentiality in correspondence that Plaintiff seeks here. Plaintiff was not seeking religious counseling or guidance in any form from Defendant Schultz. By his own admission, none of the events "took place within the Sacrament of Penance (confession)." The letter, which was intended solely to disparage Defendant Schultz, was not marked confidential, contained no confidential information about Plaintiff, and was copied to third parties.

Further, unlike the *Alexander* plaintiff, Plaintiff here did not ask for, nor was he ever assured, that his disclosures would be kept confidential. *Alexander* is inapplicable. Accordingly, we hold that under the facts of this case, Plaintiff has not stated a cause of action for common law negligence.

**CONCLUSION**

{15}    The district court's dismissal of Plaintiff's complaint is affirmed.

{16}    **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**STEPHEN G. FRENCH, Judge**