This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40463**

**HIGH PLAINS LIVESTOCK, LLC, a Texas limited company d/b/a PRODUCERS LIVESTOCK AUCTION; MICHAEL FLEN, individually; CALVIN and DARCIE PAREO, husband and wife, individually,**

      Plaintiffs-Appellants,

v.

**BARRY ALLEN; SHAWN DAVIS; RAY BACA, individually, and in their official capacities; and NEW MEXICO LIVESTOCK BOARD,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Court Judge**

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

Sandra A. Gallagher
Portales, NM

Wesley O. Pool
Clovis, NM

for Appellants

Spencer Fane, LLP
Randy S. Bartell
Shelly L. Dalrymple
Santa Fe, NM

for Appellees

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}**      Plaintiffs High Plains Livestock, LLC, Michael Flen, Calvin Pareo, and Darcie Pareo (collectively, Plaintiffs) appeal the district court's grant of a motion to dismiss in favor of Defendants Barry Allen, Shawn Davis, Ray Baca, and the New Mexico Livestock Board (the Board) (collectively, Defendants). Plaintiffs argue that (1) the New Mexico Civil Rights Act (the CRA), NMSA 1978, §§ 41-4A-1 to -13 (2021), waives sovereign immunity as a defense for Defendants; (2) Defendants were given proper notice and their claims were made within the statute of limitations, pursuant to the New Mexico Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020); (3) Defendants cannot claim sovereign immunity based on the CRA; (4) their state law claims are not barred by res judicata; (5) they stated a claim for which relief can be granted regarding their malicious abuse of process, defamation, violation of property rights, due process, and equal protection claims; and (6) their claim for injunctive relief was improperly denied. We reverse the dismissal of Plaintiffs' tort-based claims for defamation, and otherwise affirm.

**BACKGROUND**

**{2}**      Flen owns High Plains Livestock, a Texas limited liability company, d/b/a Producers Livestock Auction, that was licensed to do business in New Mexico. Darcie worked as the office manager for High Plains Livestock, and Calvin, her husband, was not an employee but was involved and affiliated with High Plains Livestock. High Plains Livestock operated a "seller's auction" for livestock in which it attempted to obtain the highest price it could for the sellers of livestock.

**{3}**      Over a period of over ten years, Plaintiffs allege they were in conflict with the Board, Allen, a law enforcement agent of the Board, Davis, a law enforcement agent of the Board, and Baca, the acting executive director of the Board. This conflict culminated with the Board executing a search warrant of High Plains Livestock's business records on January 21, 2015. Plaintiffs filed a tort claim notice on April 20, 2015, ninety days after the search warrant was executed.

**{4}**      In 2015, after the search warrant was executed, both Darcie and Calvin were charged with 139 felonies. These charges were dismissed because Darcie and Calvin were not permitted to testify to the grand jury before they were indicted. The dismissals were upheld by this Court. *State v. Pareo*, 2018-NMCA-040, 420 P.3d 605. Darcie and Calvin were later charged with fifty-one felonies in 2019. In October 2021, they each

pleaded no contest to misdemeanor offenses, contrary to NMSA 1978, Section 77-10-3(E) (1999).[1]

{5}    In January 2017, Plaintiffs filed a complaint against Defendants in district court, and quickly filed a first amended complaint. Plaintiffs' first amended complaint was promptly removed to federal court. In federal court, Plaintiffs filed a second amended complaint. In the second amended complaint, Plaintiffs made claims against Defendants for malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States or New Mexico, due process, and equal protection pursuant to the TCA. They also made claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth Amendment, Sixth Amendment, due process, equal protection, and malicious abuse of process. Finally, they requested preliminary and permanent injunctive relief. Defendants Allen, Davis, and Baca filed a motion to dismiss Plaintiffs' federal claims. After briefing, the federal court granted the motion to dismiss the federal claims and remanded the remaining claims to the district court. Plaintiffs did not appeal the dismissal of their federal claims, and actively supported the remand. Once the case was back in state district court, Defendants filed a motion to dismiss or in the alternative for summary judgment regarding the remaining claims. Without responding to the motion, Plaintiffs filed a motion to stay the proceeding until the end of the criminal proceedings, based on Darcie and Calvin's 2019 charges for fifty-one felonies, which the district court granted.

{6}    Once the criminal proceedings were finished, the parties completed their briefing on Plaintiffs' motion and the stay was lifted. After a hearing on the motion, the district court issued a letter decision explaining its decision to grant Plaintiffs' motion. The district court explained that it was granting the motion to dismiss on several grounds. First, it determined that the federal court's dismissal of Plaintiffs' federal constitutional claims was not res judicata since they were part of the same proceeding. It concluded that the TCA did "not provide for claims or causes of action under the New Mexico Constitution" and other statutes did not permit Plaintiffs to seek damages under the New Mexico Constitution, so Plaintiffs failed to state a claim for which relief could be granted. The district court determined that sovereign immunity was not waived for claims before January 21, 2015 based on the TCA's notice requirement. The district court concluded that the CRA—effective on July 1, 2021—acted prospectively only, and thus the individual defendants were entitled to qualified immunity when the claims arose. Regarding the claims of malicious prosecution and abuse of process, the district court determined the claims based on occurrences in 2009 were time-barred for failure to provide notice and that "Plaintiffs failed to allege sufficient factual support for the allegations the actions of . . . Defendants' were illegitimate, and due to the misdemeanor convictions of . . . Calvin and Darcie . . . , Calvin and Darcie . . . lost the challenge regarding probable cause." The district court also specifically determined that the claims of libel, slander and defamation of character were alleged to have occurred in 2009 and were time-barred, also that Plaintiffs failed to sufficiently plead facts to support

---

[1]"A person who violates Chapter 77, Article 10 NMSA 1978 . . . is guilty of a misdemeanor upon conviction." NMSA 1978, § 77-10-10 (1999).

the claims. Finally, the district court concluded that Plaintiffs were not entitled to injunctive relief as they failed to sufficiently plead or allege irreparable harm or a substantial likelihood of prevailing on the merits. The district court then filed a final judgment and order granting the motion. Plaintiffs appeal.

**DISCUSSION**

**{7}**     We start by addressing Plaintiffs' briefing. Plaintiffs' fact section sometimes included citations to the record proper but other times did not and sometimes cited to broad swaths of the record without giving proper pin cites. *See* Rule 12-318(A)(3) NMRA (requiring briefs to include "a summary of proceedings, briefly describing the nature of the case, the course of proceedings, and the disposition in the court below, and including a summary of the facts relevant to the issues presented for review. This summary shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation"). It also included excessive footnotes with information that was unnecessary to resolving their claims. Plaintiffs regularly cited to the second amended complaint but included the incorrect pin citation, and failed to provide citations to the evidence—like Darcie's affidavit—when our review required us to look beyond the second amended complaint. Plaintiffs' argument included the standard of review in the last few pages of its brief arguing that the standard was summary judgment, but their allegations were not based on evidence in the record but on allegations in the second amended complaint, which complicated our review. *See* Rule 12-318(A)(4) (requiring briefs to include "an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review"). In addition, Plaintiffs made several arguments regarding more than ten causes of action and subcounts in their second amended complaint. We remind Plaintiffs that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately argued and are supported both by authority and properly cited facts in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

**{8}**     Though we decline to dismiss the appeal as Defendants' request, we admonish Plaintiffs' counsel regarding the briefing and expect compliance with the Appellate Rules of Procedure moving forward. We now turn to our analysis.

**I.     Standard of Review**

**{9}**     "A motion to dismiss for failure to state a claim . . . tests the legal sufficiency of the complaint." *Derringer v. State*, 2003-NMCA-073, ¶ 5, 133 N.M. 721, 68 P.3d 961. "In reviewing a [district] court's decision to grant a motion to dismiss under Rule 1-012(B)(6) NMRA . . . , we accept as true all facts properly pleaded." *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 2, 131 N.M. 272, 34 P.3d 1148. Generally, we review a district court's decision to dismiss a case under Rule 1-012(B)(6) de novo. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917.

**{10}** However, the district court granted Defendants' motion after considering the exhibits attached to Defendants' motion to dismiss or in the alternative for summary judgment, which are relevant to Plaintiffs' malicious abuse of process and defamation claims. We therefore treat the district court's action regarding the malicious abuse of process and one of the defamation claims as granting summary judgment in favor of Defendants. *See id.* ¶ 10 ("We review motions to dismiss as motions for summary judgment when the district court considered matters outside the pleadings in making its ruling."); *First Sw. Fin. Servs. v. Pulliam*, 1996-NMCA-032, ¶ 4, 121 N.M. 436, 912 P.2d 828 (treating the district court's action as summary judgment when the district court granted a motion to dismiss after reviewing affidavits filed by the opposing party).

**{11}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. When the issue before us is whether the order should have been dismissed as a matter of law, our review is de novo. *See Dominguez v. Perovich Props., Inc.*, 2005-NMCA-050, ¶ 9, 137 N.M. 401, 111 P.3d 721 (reviewing a motion for summary judgment de novo when the parties presented no genuine issues of material fact).

**{12}** To the extent we must engage in statutory interpretation, our review is de novo. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. Generally, "[i]n construing the language of a statute, our goal and guiding principle is to give effect to the intent of the Legislature." *Lujan Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d 545. "In determining legislative intent, we look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *Pirtle v. Legis. Council Comm.*, 2021-NMSC-026, ¶ 14, 492 P.3d 586.

## II.    Tort Claims Act

**{13}** The doctrine of sovereign immunity bars suit against the State unless immunity has been waived. *See* §§ 41-4-1 to -30. "The potential tort liability of governmental entities and public employees is limited by the [TCA]." *Archibeque v. Moya*, 1993-NMSC-079, ¶ 5, 116 N.M. 616, 866 P.2d 344. "[T]he [TCA] shields governmental entities and public employees from tort liability unless immunity is specifically waived by the [TCA]." *Id.*; *see* § 41-4-4(A).

**{14}** Plaintiffs' claims arise out of Section 41-4-12, which provides in part that the TCA waives immunity for claims including "malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, . . . failure to comply with duties established pursuant to statute or law or any other deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." Pursuant to the TCA, a "law enforcement officer" is "a public officer or employee vested by law with the power to maintain order, to make arrests for crime or to detain persons suspected of or convicted of committing a crime, whether that duty extends to all crimes or is limited to specific crimes." *Id.* The Livestock Code states that

"[a]ll livestock inspectors appointed by the board shall have the same powers as any other peace officer in the enforcement of that code." NMSA 1978, § 77-2-7(D) (1999).

{15}   In order to state a tort claim under Section 41-4-12, a plaintiff must allege that (1) they have suffered a type of injury set forth in the section, i.e., personal injury, bodily injury, wrongful death, or property damage; and (2) that the injury arose out of a tort enumerated in this section or a deprivation of a right secured by law. *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶¶ 8-9, 397 P.3d 1279; *id.* (stating that "[t]he plain language of Section 41-4-12 first presents the types of injury for which a law enforcement officer's immunity may be waived" and then "delineates the torts for which a law enforcement officer's immunity may be waived"). We now turn to Plaintiffs' claims.

## A.   Qualified Immunity

{16}   Before addressing each of Plaintiffs' claims individually, we start by addressing Plaintiffs' claim that Defendants are not entitled to qualified immunity for all of their claims because the CRA's removal of the defense of qualified immunity should apply retroactively. This argument requires us to engage in statutory interpretation. *See Smith*, 2004-NMSC-032, ¶ 8.

{17}   Section 41-4A-12, which is titled "Prospective application," states, "Claims arising solely from acts or omissions that occurred prior to July 1, 2021 may not be brought pursuant to the [CRA]." Plaintiffs acknowledge their claims are based on actions before July 1, 2021, but assert that "[n]o legislative comment or any part of the [CRA] speaks to whether the defense of qualified immunity has prospective application only. The Legislature had the opportunity to provide that the forbidding of and restrictions on the defense of qualified immunity, had only prospective application and they did not, thus it must be assumed their prohibition of qualified immunity was meant to be retroactive."

{18}   Plaintiffs argument is without logic. The CRA is express that its provisions— which include a prohibition of qualified immunity—are prospective. It clearly and coherently requires that the protections and obligations of the CRA do not apply to actions that occurred prior to July 1, 2021. To determine otherwise—because the CRA does not specifically reference that the use of qualified immunity means that it is not prospective—is absurd and we decline to interpret it as such. *See Britton v. Off. of Att'y Gen.*, 2019-NMCA-002, ¶ 27, 433 P.3d 320 ("A construction must be given which will not render the statute's application absurd or unreasonable and which will not defeat the object of the Legislature." (internal quotation marks and citation omitted)).

## B.   Malicious Abuse of Process

{19}   The crux of Plaintiffs' argument is that either they have sufficiently made a claim for malicious abuse of process or that the evidence demonstrates a genuine issue of material fact regarding their malicious abuse of process claim—they argue that summary judgment is the proper standard of review but cite to the second amended complaint for their allegations. We resolve the issue in a separate manner—using the

summary judgment standard as we are basing our decision on evidence outside of the second amended complaint—and explain.

{20} The elements of malicious abuse of process are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. We construe "the tort of malicious abuse of process . . . narrowly," but in *Durham* our Supreme Court expanded the types of acts that could be considered "use of process," which need not be the initiation of a judicial proceeding. *Id.* ¶¶ 29-30.

{21} In *Fleetwood Retail Corp. of New Mexico v. LeDoux*, 2007-NMSC-047, 142 N.M. 150, 164 P.3d 31, "the Supreme Court answered two questions certified by this Court concerning the contours of the malicious abuse of process tort described in *Devaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, ¶¶ 13-17, 24, 124 N.M. 512, 953 P.2d 277 (combining previously separate torts of "abuse of process" and "malicious prosecution" and holding that the new tort could asserted as a counterclaim to the original action)," *overruled on other grounds by Durham*, 2009-NMSC-007. *Fleetwood*, 2007-NMSC-047, ¶ 19. In addressing the second question, our Supreme Court reaffirmed that a "win" for the original proceeding plaintiff as to one or more counts of their complaint provides an absolute defense against a subsequent claim of malicious abuse of process. *Id.* ¶¶ 2, 19. As the Court phrased it, "the defendant must win the entire case as a condition to proceeding with a malicious abuse of process counterclaim based on lack of probable cause." *Id.* ¶ 2. The Supreme Court's ruling was based on traditional concerns for safeguarding the right of access to the courts for honest litigants and avoiding the multiplicity of suits that might be encouraged by a more lax rule. *Id.* ¶¶ 19, 21.

{22} Plaintiffs abuse of process claims stem from the execution of the search warrant on January 21, 2015, and the ensuing actions of Defendants based on the search warrant. Plaintiffs pleaded no contest to two misdemeanor counts that stemmed from the execution of the January 21, 2015 search warrant.[2] The conclusion in those two criminal matters provides a complete defense under *Fleetwood*.

## C. Libel, Slander, and Defamation of Character

{23} Plaintiffs' claims regarding libel, slander, and defamation of character are based on two separate time periods, one in 2009 and the other after the execution of the search warrant. We address the two separately.

## 1. 2009 Comments

{24} Plaintiffs allege that they stated a claim for defamation regarding these claims based on an incident in 2009 when they allege that the previous director of the Board

---

2We note that Plaintiffs state that "[a]ll these felony counts have been dismissed with prejudice," when they in fact pleaded guilty to two misdemeanors. This obfuscated the facts and complicated our review. We admonish Plaintiffs for this lack of candor to the court.

told Flen that he could not hire Calvin and Darcie because they were bad people. We conclude that any actions based on these statements are barred because they fail to comply with the TCA's notice provision. We explain.

**{25}** Section 41-4-16(A) states,

> Every person who claims damages from the state or any local public body under the [TCA] shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the [TCA], a written notice stating the time, place and circumstances of the loss or injury.

Under Section 41-4-16(B), actual notice of the occurrence "excuses" the written notice requirement under Section 41-4-16(A). *Smith v. State ex rel. N.M. Dep't of Parks & Recreation*, 1987-NMCA-111, ¶ 19, 106 N.M. 368, 743 P.2d 124. Unless written notice is provided under Section 41-4-16(A) or "the public entity had actual notice of the occurrence, a court is jurisdictionally barred from considering the matter." *Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 49, 357 P.3d 438 (alteration, internal quotation marks, and citation omitted).

**{26}** Plaintiffs' notice was sent to the Risk Management Division of the State of New Mexico on April 20, 2015. Thus, any claims for actions before January 1, 2015 are barred, including these claims for libel, slander, and defamation of character.

**{27}** Plaintiffs argue that Defendants had actual knowledge of their claims because "they were the ones committing the tortious acts and [they] knew they were doing such." The actual notice required by Subsection B is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue. *See Frappier v. Mergler*, 1988-NMCA-021, ¶ 11, 107 N.M. 61, 752 P.2d 253. Thus, Defendants knowledge of the fact that they made the statements is not sufficient to meet the actual notice exception to the written notice requirement of the TCA.

## 2.    Post-Execution of the Search Warrant Statements

**{28}** Plaintiffs next allege that they sufficiently plead their claims regarding defamation after the execution of the search warrant when they alleged Allen had a meeting with two dairymen at a livestock auction where he stated that Plaintiffs were "crooks" and that Defendants made false claims to customers of Plaintiffs. Defendants argue that Plaintiffs have failed to state a claim for which relief can be granted.

**{29}** "Libel and slander are merely subcategories of defamation." UJI 13-1001 NMRA comm. cmt. The elements of defamation are:

> (1) The defendant published the communication;
>
> (2) The communication contains a statement of fact;
>
> (3) The communication was concerning the plaintiff;
>
> (4) The statement of fact was false;
>
> (5) The communication was defamatory;
>
> (6) The person receiving the communication understood it to be defamatory;
>
> (7) The defendant knew that the communication was false or negligently failed to recognize that it was false, or acted with malice;
>
> (8) The communication caused actual injury to the plaintiff's reputation; and
>
> (9) The defendant abused its privilege to publish the communication.

UJI 13-1002(B) NMRA.

**{30}** We first address Defendants' argument that Plaintiffs' failure to sufficiently plead damages is fatal to their claim. Plaintiffs alleged that, after the execution of the search warrant,

> Defendants Davis and Allen under the direction of Defendant Baca threatened potential High Plains customers with jail and criminal charges if they conducted business with Plaintiffs. Further, Defendant Allen had a meeting with two dairymen at the Clovis Livestock Auction in Clovis, New Mexico, and published slander per se statements that the Plaintiffs were "crooks", and Defendants made further false and defamatory statements per se to Dairyman Aaron Bogle among other High Plains customers including Dale Jones, Jericho Sanchez, Carlos Vialpando, Charlie Overton, and Phil Troost. On or about February 11, 2015, a Mr. Joe White from American Cattle related to Plaintiff Darcie Pareo, that Defendant Allen had stopped by his office to talk about High Plains. Mr. White stated that Defendant Allen told him that if High Plains resumed operating the sales barn, it would be in Mr. White's best interest not to purchase cows, there, ever again. Allen asked Mr. White if he knew any "bull-dog type" IRS auditors because Allen wanted to "sick-'em" on the sales barn.

Defendant Allen repeated this question to Mr. White at least six times. Mr. White, his wife, and an employee were present during this conversation.

Plaintiffs also alleged that Defendants published and continued to publish defamatory statements concerning Plaintiffs, that those statements constituted libel per se, slander per se, and defamation of character, and that Plaintiffs were entitled to presumed damages, actual, compensatory, and consequential damages caused by Defendants as proven at trial. These allegations are sufficient to state a claim under our notice pleading standard. *See Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 21, 314 P.3d 681 (stating that under our notice pleading standard a plaintiff is only required to state general allegations of conduct in a complaint as long as those allegations are detailed enough to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested).

**{31}** Defendants next argue that the "crooks" comment cannot form the basis of a defamation claim because it is not a statement of fact but a subjective conclusion or opinion about the speaker. They cite two out-of-state cases that held that referring to a person as a "crook" is not a provable statement. *See Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345, at 7 (D.N.D. Ill., June 29, 2015) (mem. & order); *Moore v. Waldrop*, 166 S.W.3d 380, 385 (Tex. App. 2005).

**{32}** "To support a claim for defamation, the communication by [the] defendant must contain a statement of fact. In contrast, statements of opinion alone cannot give rise to a finding of defamation." UJI 13-1004 NMRA; *see Moore v. Sun Publ'g Corp.*, 1994-NMCA-104, ¶ 23, 118 N.M. 375, 881 P.2d 735 ("[C]ommon law defamation will lie for false statements of fact but not for those statements that are but fair opinion."). Although a court may determine that a statement is unambiguously an opinion as a matter of law, *see Marchiondo v. Brown*, 1982-NMSC-076, ¶ 58, 98 N.M. 394, 649 P.2d 462, if an opinion "implies that it is based upon the existence of undisclosed facts[, it] is the same as a statement of fact." UJI 13-1004.

**{33}** Here, the statement in question—that Plaintiffs were "crooks"—rested on the premise that the allegation came from information taken from the execution of the search warrant. Therefore, we conclude that, even if the statement regarding alleged defamation was a statement of opinion, the reference to the criminal proceedings implied the existence of undisclosed facts. *See* UJI 13-1004 use note (explaining that when a court "determines that the alleged defamatory statement is or may be a statement of opinion, but further determines that the statement, if opinion, nonetheless may imply the existence of undisclosed facts," the question is one for the jury). Under these circumstances, "there is a triable issue of fact for the jury." *Marchiondo*, 1982-NMSC-076, ¶ 58 (internal quotation marks and citation omitted).

**{34}** The same is true with respect to the question of defamatory meaning. When "an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion," it is "the function of the jury to determine whether [a defamatory]

meaning was attributed to it by the recipient of the communication." UJI 13-1004 use note. Defendants' argument that stating someone is a "crook" is unambiguously an opinion, and thus Plaintiffs have not stated a claim for which relief can be granted, is supported only by cases that are not precedential, and we decline to follow their logic. We decline to determine as a matter of law that calling someone a crook is an opinion. While it is possible that Defendants, through discovery, will at some point be able to present enough evidence to allow the district court to rule on these issues as a matter of law in the context of a summary judgment motion, at this stage of the proceedings, Plaintiffs have stated a claim sufficient to withstand Rule 1-012(B)(6) dismissal. *See Fikes v. Furst*, 2003-NMSC-033, ¶¶ 17-19, 134 N.M. 602, 81 P.3d 545 (stating that summary judgment was granted in favor of the defendant where the defendant presented evidence, including deposition testimony, to show that the recipients did not attribute a defamatory meaning to the statements made by the defendant). Thus, we reverse the district court's decision regarding Plaintiffs' defamation claims stemming from actions post the execution of the search warrant.

## D.      Violation of Property Rights and Deprivation of Rights, Privileges or Immunities Secured by the United States and New Mexico Constitutions

**{35}**      Plaintiffs next argue that their claims regarding their violation of property rights and deprivation of rights, privileges, or immunities secured by the constitution and laws of the United States or New Mexico support a cause of action.

**{36}**      New Mexico has never recognized a private cause of action to enforce New Mexico constitutional rights in the absence of affirmative legislation. *See Carter v. City of Las Cruces*, 1996-NMCA-047, ¶ 13, 121 N.M. 580, 915 P.2d 336 ("Unlike federal law, New Mexico has no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes or the state [c]onstitution."); *see also Barreras v. N.M. Corr. Dep't*, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 62 P.3d 770. We note that though Defendants argue this point in their answer brief in response to Plaintiffs' factual arguments, Plaintiffs fail to address it in their reply brief. The lack of a cause of action and the fact that Plaintiffs' federal claims were dismissed by the federal court provide that Plaintiffs have failed to state a claim for which relief can be granted.

## III.      Plaintiffs' Remaining Claims and Arguments

**{37}**      Plaintiffs also argue that the district court erred in denying Plaintiffs' injunctive relief as to its malicious abuse of process and constitutional claims. As we have affirmed the dismissal of Plaintiffs' violation of property rights and deprivation of rights, privileges or immunities secured by the New Mexico Constitution, Plaintiffs have no cause of action to ground their claims for injunctive relief.

**{38}** Plaintiffs also make claims regarding the statute of limitations and res judicata.[3] As we have affirmed the majority of the district court's determinations that the claims were barred as a matter of law, we need not address these arguments.

**CONCLUSION**

**{39}** We reverse the district court as to Plaintiffs' defamation claims based on statements made after the execution of the search warrant, and otherwise affirm.

**{40}  IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,
Retired, Sitting by designation**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge, concurring in result only.**

---

[3]We note that the district court agreed with Plaintiffs' regarding Defendants' claims of res judicata, thus the argument was superfluous.